Argued and submitted November 30, 1993, remanded for entry of modified judgment; otherwise affirmed March 2, petition for review denied May 24, 1994
(319 Or 150)

Sharon K. WALLENDER,
*Appellant,*

*v.*

Fredrick D. WALLENDER,
*Respondent.*

(91-09-34393; CA A76778)

870 P2d 232

George W. Kelly argued the cause and filed the briefs for appellant.

Timothy N. Brittle argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals the trial court's judgment denying her request for an accounting and for a share of the assets held in defendant's name that were acquired after the parties' marriage was dissolved and while they were living together in a nonmarital relationship. We review *de novo*, ORS 19.125(3), and modify the judgment.

The parties were married in 1966 and, during their 15-year marriage, they had two children. In 1981, they dissolved their marriage. A dissolution judgment awarded defendant three cars, the family farm, farming equipment and cattle. Plaintiff was awarded one car and a parcel of real property. Pursuant to the judgment, the parties conveyed title to the cars and the farm to each other to reflect the individual ownership of those assets. The parties' personal relationship was not affected significantly by the divorce. Afterwards, they continued to live together on the farm in an intimate relationship, participated in their children's activities, attended church, vacationed and socialized with others together. Plaintiff was the primary caretaker of the children and helped with the farming. Defendant continued to be the primary provider of financial resources for the family. The parties permanently separated in September, 1990, when plaintiff moved out of the family home.

During the nine years that the parties lived together after the dissolution, they bought and sold assets, and the farm appreciated in value. Specifically, defendant bought two parcels of real property, farming equipment, several vehicles and other personal property, and held title to them in his name. Likewise, plaintiff purchased and held title to a house, livestock, horses, vehicles and other personal property in her name. Also, the parties acquired and maintained their own individual bank accounts after the dissolution. There is evidence that plaintiff paid for some joint expenses out of her checking account and, at times, wrote checks on defendant's account. Defendant made all mortgage payments on the farm and other real property, paid the utility bills and property taxes and, periodically, transferred money to plaintiff's account from his account. In 1988, he transferred $50,000 to plaintiff's account that came from the sale of cattle purchased with monies from defendant's individual account.

Plaintiff seeks judgment for one-half of all assets acquired during the period of cohabitation which are held by defendant in his name, less one-half of the value of the assets acquired by her during the same period. That would amount to approximately $127,000. The trial court concluded that the parties had no express agreement with regard to their financial relationship or with regard to the ownership of assets acquired after the dissolution judgment. However, it said, "it is clear that it was the defendant's intent not to pool his resources with the plaintiff during this period from dissolution to separation," and "it is also clear from the evidence that plaintiff understood the defendant's purpose and intent." On appeal, plaintiff argues that she is entitled to a share of the assets held in defendant's name, because of the parties' "long-term cohabitation in which both parties labored and contributed to the common good."

To determine whether property acquired during a period of cohabitation should be considered joint property and thereby be equitably divided, we must ascertain the parties' intent. *Beal and Beal*, 282 Or 115, 577 P2d 507 (1978). In the absence of an expression of intent, we look at the facts and inferences that can be drawn therefrom to determine whether the parties implicitly agreed to share assets equally. Factors that we and the Supreme Court have considered relevant to the issue include how the parties held themselves out to their community, the nature of the cohabitation, joint acts of a financial nature, if any, how title to the property was held, and the respective financial and nonfinancial contributions of each party. 282 Or at 122; *McWhirter v. McWhirter*, 54 Or App 409, 412, 635 P2d 12, *rev den* 292 Or 334 (1981); *Rissberger v. Gorton*, 41 Or App 65, 72, 597 P2d 366, *rev den* 287 Or 301 (1979). The manifested intentions of the parties may be different as to discrete assets. *See Brazell v. Meyer*, 42 Or App 179, 182, 600 P2d 460 (1979).

The record is clear that defendant initially did not intend to pool resources or to share assets with plaintiff after the dissolution and that she was aware of his intention to preclude her from acquiring any rights in the farm. Nonetheless, she chose to stay and continued to help operate and improve the farm. The conclusions of the trial judge are supported by defendant's testimony that there was never an

agreement to share assets and that, after the dissolution, plaintiff complained that she was not a partner in the farming operation. Plaintiff testified that she sought counseling in 1989, because

"I was having a real hard time adjusting. * * * And it got to the point that * * * I needed to figure out what I was going to do with my life because I was in limbo. I didn't know where I was going. I didn't—*I didn't have a place of my own.* I didn't have any 'security' as to where I [lived]." (Emphasis supplied.)

Also, before the parties separated, defendant offered to form a partnership with plaintiff to purchase a new farm. The offer contemplated that the parties share the down payment and become jointly liable on the mortgage. Plaintiff declined the offer.

Plaintiff asserts that her awareness of defendant's intention and her acquiescence in it do not prevent her from being entitled to share in the farm and other related assets. She relies on *Shuraleff v. Donnelly*, 108 Or App 707, 817 P2d 764 (1991), and *Wilbur v. DeLapp*, 119 Or App 348, 850 P2d 1151 (1993), and argues that we are not precluded from using our equitable powers to reach a "fair result." Those cases are inapposite. In *Shuraleff v. Donnelly, supra*, we held that there was a common intent to pool resources and to share assets based on the facts that the parties had general discussions about saving and investing for retirement, and that the defendant thought that all the property was "just one pot" despite the fact that the savings accounts were in the plaintiff's name.

In *Wilbur v. DeLapp, supra*, the plaintiff contributed to improving and maintaining the home by pooling her income to pay for repairs and other joint expenses and assuming the role of homemaker when she was not working. The defendant held legal title to the home and was solely responsible for making the mortgage payments. We said:

"There is no evidence that this financial arrangement and the division of responsibilities was not agreeable to both parties. We conclude that it was the intent of the parties that plaintiff have an interest in the house and, as a matter of equity, we hold that she is entitled to a one-half interest in the house." 119 Or App at 352.

The critical factual distinction between this case and those cited by plaintiff is that here, plaintiff knew that defendant did not intend to share his ownership of the farm after the dissolution. Our decisions in *Shuraleff* and *Wilbur* are based on the equitable authority that underlies the Supreme Court's holding in *Beal*. The parties' intent controls and equity will not compel what is contrary to their contemplation. *See Stone v. First National Bank*, 100 Or 528, 557, 193 P 1023, 197 P 304, 198 P 244 (1921). We conclude that plaintiff is not entitled to any interest in the farm or related equipment, or to other personal property including bank accounts held in defendant's individual name. Similarly, there is no evidence that the parties intended to share jointly in the Hawkins property, the real property acquired by defendant months before the parties separated.

■  However, a different situation exists with regard to the Baker County property. In May, 1987, defendant paid $120,000 from his individual account to purchase that property. Thereafter, plaintiff contributed to the improvement and maintenance of the property. She bought a cabin, paid for it to be moved on to the property and helped build a fence around it. She also went to the property each spring to "work" the cattle that were grazed on the property. Furthermore, plaintiff testified that she and defendant had discussed the possibility of partitioning the property:

> "We talked about [partitioning the property] after [defendant] had bought the property. I—We had talked about maybe building over there in the future and it was—it was *to be a family type deal* and we decided that we could divide it up into three equal parcels, especially with the way the property is fenced and located." (Emphasis supplied.)

Defendant conceded that plaintiff worked on the property, but testified that he built the fence. He did not contradict plaintiff's testimony about their future plans for the property.

We hold that this evidence supports a finding of a joint intention by the parties to share the Baker County property. The value of that property as of September, 1990, was $164,900. Accordingly, an equitable division is to give defendant credit for what he paid for the property and divide the remaining $44,900 equally. Plaintiff is entitled to an

award of $22,450, which reflects her interest in the property. In addition, plaintiff is entitled to $8,799, which represents one-half of the net rental proceeds from the property that defendant collected in 1989 and 1990.[1]

Remanded for entry of modified judgment awarding plaintiff $31,249; otherwise affirmed.

---

[1] Defendant's net rental proceeds in 1989 and 1990 were $12,043 and $5,555, respectively.