Argued and submitted April 20, at Franklin High School, Portland; judgment modified to vacate equalizing judgment in favor of respondent and to award equalizing judgment of $15,519 in favor of petitioner; otherwise affirmed June 14, 2006

In the Matter of the Domestic Partnership of

John L. EWING,
*Appellant,*
*and*

Dorla J. HARRISON,
*Respondent.*

03P-1308; A124309

136 P3d 1157

Russell Lipetzky argued the cause and filed the brief for appellant.

Chris L. Lillegard argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Wilson, Judge pro tempore.

ORTEGA, J.

**ORTEGA, J.**

Petitioner appeals from a judgment of the trial court, challenging the division of property in this equitable proceeding for the dissolution of a domestic partnership. He contends that the trial court erred when it characterized an engagement ring as partnership property and included its value in the division of the parties' jointly held assets. He also assigns error to the trial court's failure to award him the value of payments he had made to discharge a credit card debt for respondent and a down payment that he made on a house purchased by the parties. On *de novo* review,[1] we modify the judgment.

Except where indicated, the following facts are undisputed. The parties sought dissolution of their domestic partnership after a year-long engagement. At the commencement of the engagement, petitioner gave respondent a diamond ring containing a stone that was a family heirloom passed down from petitioner's great-grandmother. Petitioner had the stone remounted into the engagement ring for respondent. Petitioner (and his mother) wanted respondent to sign a prenuptial agreement requiring respondent to return the ring if the parties broke up. Respondent refused, but told them that if "something happened," she would give the ring back because "it was the right thing to do, [and] there was a lot of history in th[e] ring." When the parties broke their engagement, respondent returned the ring to petitioner as promised. The ring, valued at $17,750, had been jointly insured by the parties.

The parties purchased a house during their engagement, and petitioner made the $8,970 down payment. The parties lived in the house with respondent's adult daughter, and responsibility for the mortgage payments was divided into pro rata shares for each occupant, so that petitioner was responsible for one-third of the mortgage payment and respondent, two-thirds. The parties held title jointly and, at the time of trial, the parties' equity in the house had increased to $14,200. The parties agreed at trial that the equity minus petitioner's down payment was a jointly held

---

[1] ORS 19.415(3); *see also Pinto and Smalz*, 153 Or App 1, 3, 955 P2d 770 (1998).

asset. After respondent learned that petitioner was asking the court to award him possession of the house, she decided to seek an interest in the value of the engagement ring.

Petitioner also had paid off some of respondent's credit card debt, with the understanding that she would reimburse him at a rate of $250 per month. Petitioner also paid for groceries for the household and, although the parties dispute the significance of the grocery payments in terms of respondent's repayment obligation, they agreed at trial that respondent owed petitioner the remaining balance of the discharged credit card debt, or $3,934.

The parties asked the trial court to determine which assets were jointly held and which party was responsible for certain expenses. The major dispute between the parties was whether the value of the ring should be included in the distribution of joint assets. The trial court concluded that it should be. As for the remaining balance owed for payments on the discharged credit card debt, the trial court concluded that respondent no longer owed petitioner that balance because it was "a wash" when considered in light of respondent's assumption of the bulk of the house payment and petitioner's agreement to pay for groceries. As for the down payment, the trial court neglected to address it. The trial court awarded the ring to petitioner and the house with its equity to respondent, and ordered petitioner to pay respondent a small amount to equalize the property division.

■    In *Beal v. Beal*, 282 Or 115, 122, 577 P2d 507 (1978), the Supreme Court, addressing the rights of parties who have accumulated property while together in a domestic partnership, explained that the primary consideration in such cases is the express or implied intent of the parties. The court stated that,

> "if an intent can be found, it should control th[e] property distribution. While this is obviously true when the parties have executed a written agreement, it is just as true if there is no written agreement. * * * Thus, absent an express agreement, courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon."

*Id.*

■ Here, the trial court's ruling conflicted with the parties' manifest intention to treat the engagement ring as separate from partnership property. Apart from the fact that the parties jointly insured the ring, all of their other statements and actions indicated their intention that if the engagement were to fail, the ring would be petitioner's separate property. When petitioner gave respondent the ring, the parties discussed where the ring should go if they broke up, and petitioner and his mother requested that respondent agree in writing that the ring would be returned to their family. Even though respondent refused to sign an agreement, she assured them that, if "something happened," she would return the ring to petitioner—and she did so. Respondent admitted that it was only when petitioner would not agree to let her keep the house that she decided to assert a claim to the value of the ring. That claim, however, conflicts with her agreement to return the ring to petitioner should the engagement fail. The trial court's decision would make sense if the parties intended that the ring be jointly owned while also agreeing that petitioner would get possession of it if the partnership failed. In this case, however, it appears that the parties' intent was that the ring not be treated as partnership property in the first place. The ring therefore must be treated as petitioner's separate property, in accordance with the agreement of the parties.

■ As noted, the trial court failed to address the down payment on the house; that payment should be credited to petitioner. There is no evidence that the parties intended that payment to be treated as a joint contribution. Rather, respondent's attorney acknowledged at trial that the down payment should be credited to petitioner: "[B]efore [the equity in the house is] distributed, * * * the Court should deduct from that equity the part that [petitioner] brought into it." Accordingly, before the $14,200 in equity is divided, $8,970 should be deducted and credited to petitioner. Each party is awarded $2,615 of the remaining equity.

■ That leaves respondent's debt to petitioner arising out of her credit card debt. Again, at trial the parties agreed that the remaining balance should be paid to petitioner; accordingly, the trial court erred in determining that the

remaining debt was "a wash" because of the parties' arrangements for handling expenses while they were living together. There is no basis on this record for concluding, from the facts that respondent paid more of the mortgage and that petitioner agreed to use the money that respondent paid him for the credit card debt to pay for groceries, that respondent should be relieved of paying petitioner what she still owes him. Accordingly, petitioner is awarded the $3,934 balance of that debt to him.

To review, the ring is awarded to petitioner as his separate property. Petitioner is also awarded the down payment on the house, in the amount of $8,970, and the amount still owed on the credit card debt that he paid for respondent, $3,934. The only joint property left to be divided is the balance of the equity in the house, which amounts to $5,230. As neither party has challenged that portion of the judgment that allows respondent to keep the house, petitioner likewise is entitled to his one-half share in that equity, or $2,615. Accordingly, respondent must pay petitioner an equalizing judgment of $15,519.

Judgment modified to vacate judgment in favor of respondent and to award equalizing judgment of $15,519 in favor of petitioner; otherwise affirmed.