Argued and submitted on December 12, 2007, judgment modified to limit division of personal property to property acquired before domestic partnership ended; otherwise affirmed June 11, 2008

In the Matter of the Domestic Partnership of

Shelly HIMLER,
*Petitioner-Respondent,*
*and*

Stuart KATTER,
*Respondent-Appellant.*

Deschutes County Circuit Court
05DS0523SF; A132719

186 P3d 287

Alycia N. Sykora argued the cause for appellant. With her on the brief was Edwards Law Offices PC.

Mark Johnson argued the cause for respondent. With him on the brief was Johnson Renshaw & Lechman-Su PC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

This is an action for distribution of property following the end of a domestic partnership. The parties lived together for 16 years and had four children together. When the relationship ended, petitioner and the parties' children remained in the home in which the parties had been living, and respondent moved into another house that the parties owned. Petitioner brought this action seeking division of the property. The trial court found that the parties had intended to share all of their property equally, and it therefore awarded petitioner half of the value in the two pieces of real property and half of the personal property located in the two homes, including property acquired after the relationship ended. It determined the value of the parties' real property as of the time of trial. Respondent appeals, assigning error to the trial court's determination that the parties had intended to share their property and its valuation of the property as of the time of trial rather than the time that the parties separated. On *de novo* review, *Pinto and Smalz*, 153 Or App 1, 3, 955 P2d 770 (1998), we agree with the trial court that the parties intended to share equally all assets acquired before the relationship ended, but we find that there was no intent to share assets acquired thereafter. With respect to the property acquired before the relationship ended, we agree with the trial court that it should be valued as of the time of trial, not as of the time that the parties separated.

We take the following facts from the record. The parties began dating in 1985. They both lived and worked in Salem at the time. Petitioner had a daughter from a previous relationship. In 1988, respondent moved to Bend, where he purchased a house and took a job as an accountant. The following year, petitioner left her job, and she and her daughter moved in with respondent in Bend. After eight months, she began working full time as a finance assistant for the City of Bend.

In July 1995, the parties had their first child together. They concluded that they needed a bigger house. The following month, respondent bought a house on Summit Drive. He paid for the house using the proceeds of a loan for the full purchase price. Only respondent's name appeared on

the title of the new house. Respondent did not immediately sell the house that the parties had been living in. The parties rented it out for a time before eventually selling it.

In 1997, after the parties had their second child, petitioner went from full-time work to part-time. The parties eventually had two more children together. In 2000, while petitioner was pregnant with their fourth child, the parties again concluded that they needed a bigger house. Respondent refinanced the house on Summit Drive, taking out $100,000 of the equity that had accrued to make a down payment on a new house on Collett Way. The new house was again titled in respondent's name only. The parties kept the house on Summit Drive as a rental property.

After their fourth child was born, the parties agreed that petitioner would quit her job and be a full-time stay-at-home mother. From the time that she began working for the City of Bend until she resigned, petitioner, who maintained a separate checking account, never made any mortgage payments, but she used all of her income for household expenses. She also opened a line of credit with her bank, which she used to cover expenses. Respondent often made payments on petitioner's line of credit when her income was not sufficient to cover it. After petitioner left her job, respondent put her on the payroll of his accounting firm, paying her a gross monthly income of $1,500, purportedly as his "personal assistant," although she did not work at the firm—his plan was essentially to pay her to care for the children and run the household, so that she would continue to have money for groceries and other expenses. Petitioner also continued to rely on her line of credit, on which respondent continued to make payments.

During their relationship, in at least some circumstances, the parties held themselves out as a married couple. They obtained family memberships to two athletic clubs. On the applications for those memberships, respondent stated that the parties were married. When petitioner was pregnant with the parties' first child, respondent bought a ring for her, and she wore it "like a wedding ring." Petitioner testified that people who did not know them believed that they were married.

In April 2005, the parties' relationship ended. Respondent moved from the Collett Way house into the Summit Drive house, which was then vacant. He spent approximately $50,000 furnishing the house. Respondent continued to make the mortgage payments on both houses and paid the utility bills for both as well. He continued to pay petitioner's "salary" through August 2005.

Sometime around December 2005, respondent gave petitioner a letter informing her that she had 30 days to move out of the house on Collett Way. He later referred to the letter as her "eviction notice." Petitioner did not move out.

Petitioner initiated this action in July 2005. Trial took place in March 2006. After hearing the evidence, the court found that the parties had intended to share equally the real property and all of the household items. The court awarded respondent both houses, and it ordered petitioner to vacate the Collett Way house by July 15, 2006. However, it awarded petitioner an equalizing judgment of $372,738.50, based on the appraised value of the two houses at the time of trial ($760,000 and $540,000) minus the balances remaining on the mortgages ($313,764 and $95,429) and a home equity line of credit ($145,330) as of the time that the parties separated. The court awarded each party half of all the personal property located at the two houses.[1] The judgment states, "As a specified list of the property was not provided, the parties shall agree to a division of the property or supplement the record with a list of the property and the fair market value for the court to divide."

After the court entered its judgment, respondent filed a motion to modify the judgment, pursuant to ORCP 71,

---

[1] The court found that the parties had not made any agreement as to other personal property, including retirement or other investment accounts and respondent's business interests, which it ordered would remain with the party named on the assets. The court did not make an express finding as to the parties' intent with respect to their automobiles, but it awarded one vehicle to petitioner and the other two to respondent. Neither party challenges the trial court's determination as to any of those items of personal property, and we do not disturb that aspect of the judgment. All references to the parties' "personal property" hereafter do not include those items.

asking the court to clarify which personal property the parties were to divide, arguing that it should be limited to property acquired before their separation. Respondent also asked the court to receive into evidence exhibits listing the parties' personal property, the mortgage and utility payments that respondent had made on the Collett Way house after he moved out, and expenses that respondent had incurred to repair damage that he contended petitioner had allowed her pets to cause to the house. Respondent argued that the court should adjust the equalizing judgment to reflect property that petitioner had not delivered to him—some of which, he contended, petitioner had sold or destroyed—as well as the mortgage and utility payments and the repair expenses.

At the hearing on the motion, petitioner's counsel asserted that the disagreement as to how to divide the personal property was based on the parties' disagreement over whether the judgment applied to property acquired after the parties separated. He asserted that, once the meaning of the judgment was clarified, there would be no further problems with dividing the property. With respect to respondent's contention that petitioner had sold or destroyed property, counsel contended that, if any property had in fact been disposed of improperly, that could be accounted for in the division of the assets. He asserted that the division of personal property was "not something that necessarily requires the Court's independent attention, certainly not today."

The court granted the motion to modify the judgment in order to clarify which personal property was to be divided. It clarified that its intent in the judgment was to order division of all personal property at the two houses at the time of trial. The court accepted petitioner's counsel's position that the parties could resolve the remaining issues raised by respondent, stating that the "matter can be brought before the Court if and when it's appropriate."

This appeal followed. Respondent makes three assignments of error. Because the first two are closely related, we consider them together. In the first, respondent challenges the trial court's finding that the parties intended to share all property. Respondent concedes that the parties intended to share the household items accumulated during

the relationship, but he contends that there is no evidence that either party intended to share any property acquired after the relationship ended or that he ever intended to give petitioner an interest in the real property. In his second assignment of error, respondent argues that, even if the parties intended to share all of the property, the trial court erred in valuing the property as of the date of trial rather than the date that the relationship ended.

Petitioner responds that the evidence demonstrates that the parties intended to pool their resources for their common benefit during the time that they lived together. With respect to the period between the parties' separation and the trial, petitioner contends that, although the parties were not living together and their romantic relationship had ended, the parties' domestic partnership nonetheless continued because the parties remained financially entangled until the trial. Petitioner points out that respondent paid the mortgage and the utilities for the Collett Way house, continued to pay her "salary" for a time, and even made a payment on her credit line. She also notes that she continued to maintain the home and care for the children, as she had always done. Petitioner contends that the parties' conduct signals that they intended to continue the domestic partnership until it was dissolved by the trial court. Accordingly, she argues, the court correctly valued and divided the property as of the date of the trial.[2]

We begin with the parties' arguments as to their intent to share the property. In a domestic partnership, unlike in a marriage, there is no presumption of equal contribution to the acquisition of property owned by the partners.[3] Rather, in determining how property should be distributed

---

[2] Petitioner contends at the outset that respondent failed to preserve the issue raised in his second assignment of error—namely, the timing of the valuation of the property. We conclude that the issue was adequately raised before the trial court.

[3] In 2007, the legislature enacted House Bill 2007, authorizing the creation of legally recognized domestic partnerships and extending rights, privileges, and benefits available to married individuals to individuals in domestic partnerships. Or Laws 2007, ch 99. That law does not apply in this case, and nothing in this opinion should be construed as addressing the rights and liabilities created by domestic partnerships under HB 2007.

following the breakdown of a domestic partnership, the primary consideration is the express or implied intent of the parties. *Beal v. Beal*, 282 Or 115, 122, 577 P2d 507 (1978). In the absence of an express agreement, we examine the evidence and inferences that can be drawn therefrom to determine whether the parties "intended to pool their resources for their common benefit." *Id.* If the evidence indicates that the parties had that intent, then property acquired during the relationship is considered to be jointly owned, and should be divided accordingly. *Wallender v. Wallender*, 126 Or App 614, 617, 870 P2d 232, *rev den*, 319 Or 150 (1994).

> "Factors that we and the Supreme Court have considered relevant to the issue include how the parties held themselves out to their community, the nature of the cohabitation, joint acts of a financial nature, if any, how title to the property was held, and the respective financial and non-financial contributions of each party."

*Id.* However, the fact that title is held by one party only or that direct financial contributions to the acquisition were made disproportionately or even solely by one party does not by itself demonstrate a lack of intent to own property jointly. *See Wilbur v. DeLapp*, 119 Or App 348, 352, 850 P2d 1151 (1993) ("Here, defendant held legal title to the house and was solely responsible for the mortgage payments. Legal ownership of the property, however, is not dispositive.").

We need not detain ourselves at length analyzing the issue of the parties' intent in this case with respect to property acquired before the domestic partnership ended. We agree with the trial court that the parties intended to share those assets equally. However, we find that there was no intent to share assets acquired after the partnership ended—that is, after respondent moved out of the Collett Way house. We reject petitioner's argument that, although the romantic relationship ended when respondent moved, the domestic partnership continued because the parties remained financially entangled. Respondent's attempt to evict petitioner from the Collett Way house is utterly inconsistent with the view that he did not intend to end the domestic partnership. Although respondent continued to support petitioner after moving, including by paying her "salary" for four months, his conduct does not give rise to an inference that he intended to

continue to pool his resources with petitioner's for their common benefit. Rather, the more plausible explanation is that respondent recognized and intended to carry out his ongoing obligation to provide for the parties' children.

In short, the trial court did not err in ordering equal division of the real property and the personal property acquired before the parties separated. However, because we find that the parties did not intend to continue to share their resources equally after they separated, we conclude that the court erred in ordering the division of personal property acquired after the relationship ended—namely, the $50,000 worth of property that respondent acquired to furnish the Summit Drive house.

■ We turn to the question of the appropriate date of valuation for the property that is subject to division. Both parties contend that property is to be valued as of the date the domestic partnership ended; they diverge only as to when that occurred in this case. We disagree with their shared premise. Property is not valued when the domestic partnership ends. As we explain below, under the regular rules of cotenancy, it is valued when the property is divided—that is, at the time of trial.[4] When property is held by two parties jointly, it remains the property of both parties until it is divided, regardless of whether the parties' relationship has ended, and, subject to certain credits that we discuss below, the parties retain equal interests in the property.

The parties rely on *Beal* in support of their shared premise, but they misconstrue that case. The parties in *Beal* purchased a house in 1972. Both parties were named on the land sale contract. The plaintiff contributed $500 toward the down payment; the defendant contributed $1,500. The defendant made the first monthly mortgage payment, and the plaintiff made all of the payments thereafter. After they lived together in the house for two years, the defendant moved out. The plaintiff brought an action seeking a declaration of the

---

[4] When property is judicially divided, the division takes legal effect when the judgment is entered, which generally does not occur until weeks or even months after the trial. Nevertheless, because the judgment is based on evidence taken at trial, practical realities dictate that property values must be established at the time of trial rather than when the judgment is entered.

parties' respective interests in the property. The trial court found that the parties "each owned an undivided one-half interest in the property." *Id.* at 117.

■ On appeal, the Supreme Court found that the parties "intended to pool their resources for their common benefit during the time they lived together" and that "they should be considered equal cotenants," although it concluded that "fairness dictate[ed] that [the defendant] should receive credit for the $500 additional she paid on the down payment."[5] *Id.* at 122-23. The court went on to note, however, that "a different situation exists after [the defendant] moved out of the residence in June, 1974." *Id.* at 123. It held that "their property rights after that date should be determined by the regular rules of cotenancy." *Id.* The court concluded that the defendant was obligated to reimburse the plaintiff for 50 percent of the mortgage payments that he made after she moved out.

■ The court did not hold, as the parties assert, that the property is to be valued at the time that the domestic partnership ends. It held that, when the partnership ends, the parties' property rights are determined thereafter "by the regular rules of cotenancy." *Id.* at 123. Under those rules, the parties retain an undivided one-half interest in the property; however, each party must reimburse the other for 50 percent of any contribution made by the other. *Id.* at 123-24. In short, *Beal* stands for the proposition that each party is entitled to an equal share in the equity that accumulates by virtue of appreciation in the property's value *until the property is divided*, but that the right to share equally in the equity that accumulates by virtue of ongoing payments ends when the

---

[5] It is not entirely clear why, given that the court found that the parties intended to pool their resources for their common benefit, it held that fairness dictated that the defendant was entitled to credit for having paid a larger share of the down payment. Beyond saying that "fairness" dictated the result, the court did not explain why the down payment should be treated differently from the monthly payments, which the plaintiff had paid disproportionately. We need not attempt to divine the court's reasoning, however, because any speculation here would be purely academic. In this case, the parties did not make a down payment on the Summit Drive house—respondent took out a loan for the entire purchase price—and the down payment on the Collett Way house came from the equity in the Summit Drive house when respondent refinanced that loan. Because the equity in the Summit Drive house was a joint asset, the down payment on the Collett Way house was also a joint asset, so neither party is entitled to a greater share of the credit for it.

domestic partnership ends. The premise shared by the parties in this case—that property should be valued as of the date that the parties' relationship ended and divided accordingly—fails to acknowledge that each party retains rights in the property after the parties separate. Their premise would also deprive one party of his or her interest in any post-separation appreciation in value and give the other party a windfall.

■    In this case, the trial court properly valued the parties' real property. It awarded title to respondent with an equalizing judgment to petitioner. It determined the value of the property at the time of trial, thus including in the equalizing judgment petitioner's share of the appreciation up to the point of division. The court also properly credited respondent for the post-separation mortgage payments that he made; in determining the amount of the equity to be divided, the court subtracted the balances on the mortgages and the line of credit as of the time of separation. In other words, the post-separation payments that respondent made were not included in the equity that the court divided.[6]

Similarly, with respect to the parties' personal property acquired before the parties separated, the court properly valued that property as of the time of trial.

■    We turn briefly to respondent's third assignment of error. Respondent argues that the trial court erred in denying his post-judgment motion to supplement the record with lists of personal property for the court to determine values and to determine offsets to the money award. According to respondent, the court should have allowed the evidence in order to effectuate the property division.

---

[6] In his brief, respondent contends that part of the $50,000 that he spent after moving into the Summit Drive house was for "remodeling." Presumably, a party would be entitled to credit for any increase in equity that resulted from post-separation contributions by that party that improved the value of the property. *See Palmer v. Protrka*, 257 Or 23, 32, 476 P2d 185 (1970) (if the value of property held by cotenants is enhanced by improvements, the cotenant improving the property should be credited with the amount representing the increase in value of the other cotenant's interest). However, the record does not support the conclusion that he added value to the real property and therefore is entitled to reimbursement. He testified only that he furnished the house, not that he remodeled it.

As noted above, the trial court deferred making a more specific division of the personal property after petitioner's counsel asserted that the parties would likely be able to resolve the matter without the court's intervention. The court stated that "that matter can be brought before the Court if and when it's appropriate." Because the court deemed it unnecessary at that time to make a more specific order regarding division of personal property, it was unnecessary to supplement the record with lists of specific items and their values. We reject respondent's third assignment of error.

To summarize, we conclude that the trial court erred in dividing personal property that the parties acquired after the domestic partnership ended. However, to the extent that the parties' property is subject to division, the court properly valued it as of the time of trial, subject to credit in respondent's favor for mortgage payments made after the parties separated.

Judgment modified to limit division of personal property to property acquired before domestic partnership ended; otherwise affirmed.