Argued and submitted September 8, 2020, reversed and remanded July 28, petition for review denied December 23, 2021 (369 Or 110)

George Scott MANLEY, Jr.,
as Personal Representative of the
Estate of Matthew Allen Manley, deceased,
*Plaintiff-Respondent,*

*v.*

Gina M. McKINNEY,
*Defendant-Appellant,*

*and*

NATIONSTAR MORTGAGE, LLC,
dba Mr. Cooper,
*Defendant.*

Washington County Circuit Court
18CV18144; A171346

496 P3d 663

Defendant and Matt Manley were in a long-term romantic relationship. In 2009, they purchased a house together, holding title as tenants in common, and they lived there together until 2013, at which point the relationship ended, Manley moved out, and defendant continued living in the house and making house payments. In 2018, Manley died unexpectedly. Plaintiff, as personal representative of Manley's estate, brought a partition action. The trial court ordered a "private sale" of the property, and it awarded $93,500 to Manley's estate, representing half the equity value of the property. Defendant appeals, arguing that the trial court erred in not requiring contribution from Manley's estate for post-separation house payments and repairs. She also asserts that the trial court erred in appointing a realtor. *Held*: The trial court erred in failing to require contribution. Under the regular rules of cotenancy, defendant was obligated to contribute to post-separation house payments and eligible repairs. On remand, the court should also clarify the type of sale that was ordered, as relevant to the realtor issue.

Reversed and remanded.

Ricardo J. Menchaca, Judge.

Ross A. Day argued the cause for appellant. Also on the briefs was Day Law, P.C.

Mary W. Johnson argued the cause for respondent. Also on the brief was Mary W. Johnson, P.C.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Defendant was in a long-term relationship with Matt Manley. In 2009, they purchased a house together, where they lived until 2013, when the relationship ended and Manley moved out. Defendant continued to live in the house. In 2018, Manley died unexpectedly. Plaintiff, as personal representative of Manley's estate, brought this partition action. After hearing the evidence, the trial court awarded $93,500 to Manley's estate, as half the equity value of the property. Defendant appeals. In her first assignment of error, she contends that the trial court erred in not ordering contribution from Manley's estate for post-separation house payments and repairs. In her second assignment of error, she challenges the trial court's appointment of a realtor. For the following reasons, we reverse and remand.[1]

## I.  FACTS

Defendant requests *de novo* review, but we are unpersuaded that this case is appropriate for *de novo* review. *See* ORS 19.415(3)(b) (granting us "sole discretion" to allow *de novo* review in equitable proceedings). We are therefore bound by the trial court's factual findings if they are supported by any evidence in the record. *Staveland and Fisher*, 366 Or 49, 61, 455 P3d 510 (2019). We state the facts accordingly.

Defendant and Manley were an unmarried couple for at least 15 years. In 2009, they purchased the property that is the subject of this lawsuit and began living there together. They took title as tenants in common. Both parties contributed to a joint bank account from which they paid the down payment, closing costs, monthly house payments (covering the mortgage, property taxes, and home insurance), and repairs. They did not keep track of individual contributions.

In 2013, the parties ended their relationship, and Manley moved out. Defendant continued to live in the house and made the house payments. The parties did not have an express agreement about what would happen with the house,

---

[1] We reject defendant's third assignment of error, regarding the denial of her unjust-enrichment counterclaim, without written discussion.

but, according to defendant, they had an "understanding" that she would stay in the house and that he would move out. She kept paying the house payments after he moved out because it was "assumed." Defendant intended to refinance the property when she was in a better financial position and buy out Manley at that point.

In January 2018, Manley died unexpectedly. Plaintiff filed this partition action as the personal representative of Manley's estate. Under ORS 105.205, when two people hold real property as tenants in common, either one of them "may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner." If the court determines "that the property or any part of it is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale of the property[.]" ORS 105.245.

In his complaint, plaintiff alleged that defendant and Manley's heirs were "equal one-half owners as tenants in common" and that they were unable to agree on the management of the property. Plaintiff requested that the court order the sale of the property and distribute the proceeds between defendant, Manley's heirs, and the mortgage holder. In response, defendant pleaded an affirmative defense of contribution, asserting that she was entitled to a $66,002.80 credit against any award to plaintiff, representing one-half of her house payments and repair costs since Manley moved out.

The case went to trial. After hearing the evidence, the trial court sitting as factfinder issued a written opinion, identifying two issues for decision: first, what type of partition it should order; and, second, the amount (if any) that defendant was entitled to receive from Manley's estate. On the first issue, the court ordered a prompt "partition by private sale" and named a particular person as "realtor." On the second issue, the court acknowledged that "the actual intent of the parties is difficult to determine." The court found that no enforceable written agreement existed and sought to discern the parties' intent as "implied" from

their actions. It noted evidence that the parties had a joint bank account from which they had paid the closing costs and, while living together, the house payments; that the joint account remained accessible to Manley after he moved out; that Manley had assisted with repairs to some extent after moving out; that defendant had indicated to Manley that she would refinance the house when she got into a "better financial position"; and that defendant had not yet refinanced at the time of Manley's death. The court found that the parties intended that defendant would refinance the property at some point and that an equitable distribution would occur at that time.

The trial court then calculated the equity and ordered for plaintiff to receive $93,500 from the "private sale" of the real property. The court did not explain its calculation. However, in the context of the parties' arguments, it appears that the court took the market value of the property at the time of trial ($440,000), subtracted the mortgage loan balance at the time of the parties' separation ($253,000), resulting in a difference of $187,000, and then divided by two, which equals $93,500. The court made no express mention of contribution.

## II.   PROPERTY DIVISION

In her first assignment of error, defendant contends that the trial court erred by not requiring plaintiff to contribute to post-separation house payments and repairs. We first discuss the relevant law, and then apply it in this case.

### A.   *Governing Legal Principles*

The leading case on nonmarital property division is *Beal v. Beal*, 282 Or 115, 123, 577 P2d 507 (1978), which addresses property distribution for people "who have been living together in a nonmarital domestic relationship." The parties in *Beal* were an unmarried couple who bought real property together.[2] *Id.* at 117. They each contributed to the down payment, with the defendant contributing a larger amount. *Id.* The defendant paid the first house payment

---

[2] As it happens, the parties in *Beal* had been married in the past, but they divorced shortly before buying the subject property. 282 Or at 117. It is well-established that *Beal* applies equally to couples who have never been married.

(covering the mortgage and property taxes), and the plaintiff paid all subsequent house payments, while the defendant's income was used for other family expenses. *Id.* The parties lived together in the house, making various upgrades and repairs, some of which the defendant paid and some of which were paid from a joint savings account. *Id.* After two years, the defendant moved out, and the plaintiff continued to live in the house and to make all monthly payments. *Id.*

In an action to determine the parties' property interests, the trial court decreed that each party owned an undivided one-half interest in the property. *Id.* On appeal, the Supreme Court articulated for the first time the governing principles for real property division between unmarried couples. After examining various treatises and extrajurisdictional decisions, the court rejected an argument that the regular rules of cotenancy should govern property distribution. *Id.* at 121-22. Instead, it held that, when dealing with property disputes between two people who have been living together in a nonmarital domestic relationship, courts "should distribute the property based upon the express or implied intent of those parties." *Id.* at 123. It explained:

> "We believe a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution. While this is obviously true when the parties have executed a written agreement, it is just as true if there is no written agreement. The difference is often only the sophistication of the parties. Thus, absent an express agreement, courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon."

*Id.* at 122; *see also Staveland*, 366 Or at 62 (recognizing that nonmarital property division is driven by intent, whereas marital property division is driven by equity).

Applying that principle, the *Beal* court determined that each party had an undivided one-half interest in the property, *i.e.*, that the parties "st[ood] on an equal basis during the time they were living together." *Id.* at 123. The only adjustment that the court made regarding the period of cohabitation was that it credited the defendant $500 for

her greater contribution to the down payment, as a matter of "fairness." *Id.*

Having determined the parties' respective ownership interests based on their implied intent while cohabitating (50/50), the court next turned to post-separation issues. The court explained that, once cohabitation ends, "the regular rules of cotenancy" apply. *Id.* In *Beal*, the defendant had moved out in June 1974; the parties thereafter lived apart, maintained independent households, and did not contribute to each other's maintenance; and the plaintiff continued to live in the house for another three years, paying $7,469 in house payments during that time. *Id.* Applying the regular rules of cotenancy, the court held that (1) the defendant was obligated to reimburse the plaintiff for 50 percent of the house payments that the plaintiff made after June 1974; and (2) the plaintiff was obligated to pay the defendant 50 percent of the property's reasonable rental value after June 1974, *if* the plaintiff's use of the property had excluded the defendant's use.[3] *Id.* at 123-24. As to the second point, the court found that "the relationship of the parties was such that it apparently would have been impractical for the defendant to occupy the premises while the plaintiff was living there." *Id.* at 124. Accordingly, the defendant was "entitled to one-half of the fair rental value from June 1, 1974." *Id.*

A few years later, we decided *Ireland v. Flanagan*, 51 Or App 837, 627 P2d 496 (1981), a case involving two women who had lived together in a romantic relationship. The plaintiff brought a suit in equity seeking an award of one-half interest in the real property that they had occupied together, as well as an accounting for the defendant's period of exclusive use. *Id.* at 839. Applying *Beal*, we held that the trial court had erred in denying relief to the plaintiff. *Id.* at 844. We looked to evidence of the parties' intent while cohabitating to determine that the parties were equal cotenants and should share equally in the property's equity. *Id.* at 843. We then considered post-separation issues. Because the plaintiff had not contributed to house payments since moving out, the defendant was "entitled to

---

[3] The idea behind a rental offset is that, if both parties had moved out, they would be able to rent the property at fair market value, splitting the proceeds.

reimbursement by plaintiff for 50% of the house payments made by defendant after October 1, 1978." *Id*. at 844. And, "because defendant's occupancy of the property excluded plaintiff's use and enjoyment thereof, plaintiff as a co-tenant [was] entitled to recover one-half of its fair rental value from October 1, 1978." *Id*.

The Supreme Court recently reaffirmed *Beal*, describing it as "[t]he leading case" on nonmarital dissolution. *Staveland*, 366 Or at 58. The Supreme Court's decision in *Staveland* focuses largely on the standard of review applicable to the intent issue. Ultimately, *Staveland* holds that, under *Beal*, "in nonmarital dissolution cases, the controlling question is what the parties either expressly or implicitly intended," and, in the absence of an express agreement, "the determination of the parties' intent is a question of fact" that is to be reviewed as a question of fact. *Id*. at 59.

Most recently, in *Joling and Joling*, 297 Or App 568, 576, 443 P3d 724 (2019), we stated, "Over 40 years later, *Beal* and its progeny remain the controlling law for the distribution of assets acquired during a domestic partnership."

As described, *Beal* and its progeny provide a clear set of rules for courts to apply when they are asked to divide real property after the end of a nonmarital domestic relationship. We would normally end our discussion of the governing legal principles there. However, because of the prominent role that it has assumed in this case—as will be discussed more later—we must also address one more case: *Himler and Katter*, 220 Or App 411, 186 P3d 287 (2008).

In *Himler*, the parties separated after a 20-year relationship, the petitioner continued to live in what had been the family home, and the respondent moved into a second house that he had purchased during the relationship as a rental. *Id*. at 413. The parties disagreed about the division of assets, including both real and personal property, leading the petitioner to file an action. *Id*. Regarding the real property, the trial court found as fact that the parties had intended to share equally in both properties. *Id*. at 415. The court then awarded the actual properties to the respondent, but with an equalizing judgment for the petitioner, based on the market value of the properties at the time of trial, less

their loan balances at the time of separation. *Id*. The respondent appealed. *Id*. at 416. Regarding the real property, the respondent argued primarily that the parties had never intended to share in the properties—an argument that we rejected, agreeing with the trial court that the parties were equal cotenants. *Id*. at 416-19.

Alternatively, in a second assignment of error, the respondent in *Himler* argued that, if the properties were to be treated as jointly owned, the court should have used his move-out date, rather than the trial date (which was 11 months later), to calculate the dividable equity. *Id*. at 417. The petitioner disagreed, asserting that it was proper to use the trial-date market values. *Id*. We held that the trial court did not err in using the trial-date market values. *Id*. at 421. We explained that, under *Beal*, "when the partnership ends, the parties' property rights are determined thereafter 'by the regular rules of cotenancy'" and, "[u]nder those rules, the parties *retain an undivided one-half interest in the property*; however, each party must reimburse the other for 50 percent of any contribution made by the other." *Id*. at 420 (emphasis added). Thus, "each party is entitled to an equal share in the equity that accumulates by virtue of appreciation in the property's value until the property is divided," *id*. (emphasis omitted), with the trial date standing in for the property-division date, *id*. at 419 n 4 ("When property is judicially divided, the division takes legal effect when the judgment is entered, *** [but] practical realities dictate that property values must be established at the time of trial rather than when the judgment is entered."). We then noted that, by using the trial-date market values but the separation-date loan balances, the trial court had excluded from the property division any equity resulting from post-separation mortgage payments, effectively "credit[ing]" the respondent for having made those payments. *Id*. at 421.

It is the last remark that has taken on significance in this case and therefore requires some attention. The most important thing to note is that neither party in *Himler* challenged the trial court's use of the separation-date loan balances to calculate equity. Rather, the respondent's claim of error was "that, even if the parties intended to share all of the property, the trial court erred in valuing the property

as of the date of trial rather than the date that the relationship ended." *Id*. at 417. In commenting on the trial court's use of the separation date-loan balances—which was not challenged—we appear merely to have been trying to explain why the trial court used different dates for the two parts of the equity calculation.

*Himler* should not be read to suggest that, if a party requests contribution as provided in *Beal*—a right expressly recognized in *Himler*, *id*. at 420—the trial court may disregard the methodology discussed in *Beal* and instead use the equity-calculation method from *Himler* to approximate it. Due to mortgage interest, giving the party who paid the post-separation mortgage payments the benefit of 100 percent of any resulting loan reduction is a highly unreliable proxy for enforcing a right to reimbursement for 50 percent of the payments themselves. In any event, we have no authority to change the regular rules of cotenancy cited in *Beal*, nor did we purport to do so in *Himler*. In no way should *Himler* be understood to modify *Beal* with respect to contribution rights.[4]

We reaffirm that the principles articulated in *Beal* govern the distribution of real property after the end of a nonmarital domestic relationship. Under *Beal*, courts "should distribute the property based upon the express or implied intent of th[e] parties." *Beal*, 282 Or at 123. If the parties intended to own the property equally, the trial court should divide the equity equally.[5] *Id*. The court should then account

---

[4] We emphasize that *Himler* does not contain any holding regarding the proper application of post-separation contribution rights. The opinion is devoted mostly to the first and second assignments of error, neither of which asked the court to determine whether petitioner owed respondent contribution for post-separation house payments. *See Himler*, 220 Or App at 416-17. As for the third assignment of error—regarding the alleged denial of respondent's post-judgment ORCP 71 motion to reopen the record to add certain evidence, including evidence regarding "offsets"—we addressed that assignment only briefly and made no mention of contribution. *Id*. at 421-22. To the extent that the third assignment touched in any way on contribution issues (which is not apparent from the published opinion), we rejected the third assignment on the basis that the trial court had "deferred" ruling on the issues raised in the ORCP 71 motion, such that any claim of error regarding those issues was premature. *Id*. at 422. Our ruling on the third assignment therefore also created no law on post-separation contribution.

[5] To calculate the equity, the principles articulated in *Beal* would suggest that a trial court should typically use the property's market value at the time of trial, less the loan balances at the time of trial. That methodology is consistent

for unequal down payment contributions, if appropriate, *see Beal*, 282 Or at 123, and for post-separation payments as provided in *Beal*. Absent a contrary agreement, the regular rules of cotenancy apply post-separation. *Id*. at 123. Under those rules, if one party stays in the house and pays the house expenses, that party is entitled to contribution for mortgage payments, property taxes, and, in some cases, repairs and improvements. *Id*. at 123-24 (mortgage payments and property taxes); *Palmer v. Protrka*, 257 Or 23, 31 & n 9, 476 P2d 185 (1970) (repairs); *Lesser v. Lesser*, 79 Or App 738, 741, 720 P2d 405 (1986) (repairs and improvements). At the same time, if the moved-out party was effectively excluded from using the property, the party who stayed must pay the fair rental value of the property. *Beal*, 282 Or at 124. Thus, for example, in *Beal*, the defendant was required to reimburse the plaintiff for 50 percent of the post-separation mortgage payments as contribution, while the plaintiff was required to pay 50 percent of the fair rental value to the defendant to compensate for the plaintiff's exclusive use. *Id*.

B.   *Application to this Case*

With those principles in mind, we turn to the specifics of this case. Defendant contends that, under *Beal*, she is entitled to contribution from plaintiff for house payments and repairs that she made from 2013, when Manley moved out, until property division. Plaintiff disagrees, arguing that *Beal* does not control.

We agree with defendant that *Beal* controls. *Beal* expressly articulates the legal principles that apply when distributing real property between two people who were in

---

with the parties being equal cotenants until property division, including having contribution rights regarding house expenses and rights to share in rental income. *Beal*, 282 Or at 122-24. However, that particular issue is not squarely presented in this appeal, the briefing around it is minimal, and existing case law may require scrutiny to finally settle the point. *Compare Ewing and Harrison*, 206 Or App 478, 480, 136 P3d 1157 (2006) (division based on equity at time of trial), *Wilbur v. DeLapp*, 119 Or App 348, 353, 850 P2d 1151 (1993) (division based on equity at time of trial), *and Himler*, 220 Or App at 421 (using trial-date market values to calculate equity), *with Staveland and Fisher*, 295 Or App 210, 221-22, 433 P3d 749 (2018), *aff'd but criticized on other grounds*, 366 Or 49, 455 P3d 510 (2019) (requiring use of separation-date market value to calculate equity, without discussing cotenancy rules), *and Wallender v. Wallender*, 126 Or App 614, 619, 870 P2d 232, *rev den*, 319 Or 150 (1994) (using separation-date market value to calculate equity, without explanation).

a nonmarital domestic relationship. Plaintiff attempts to distinguish *Beal* on the basis that this is a partition action. Essentially, plaintiff argues that, by bringing a partition action, he triggered the application of different legal standards than would apply in a declaratory judgment action like *Beal*. Given the broad language of *Beal*—which announced how courts should distribute property "when dealing with the property disputes of [two people] who have been living together in a nonmarital domestic relationship," 282 Or App at 123—we are unpersuaded that a party can circumvent *Beal* by filing a partition action instead of being party to a different type of action. Indeed, we cited *Beal* as controlling precedent in *Brazell v. Meyer*, 42 Or App 179, 182, 600 P2d 460 (1979), a case that was tried as a partition action despite a procedural twist that led the petitioner to file it under another description.

Neither of the partition cases that plaintiff cites stand for the proposition that the post-separation contribution rights discussed in *Beal* are unavailable in a partition action arising from a former nonmarital domestic relationship. In *Brandt v. Brandt*, 215 Or 423, 447, 451, 333 P2d 887 (1958), the issue before us was whether the plaintiff had an ownership interest in certain real property acquired when the parties were under the mistaken impression that they were married, and we held that she had an undivided one-half interest. *Brandt* predates *Beal* by 20 years and makes no mention of anyone seeking post-separation contribution; it does not follow that *Brandt* precludes post-separation contribution in a partition action. Similarly, in *Brazell*, 42 Or App at 183, the issue was whether the parties had intended that each have an undivided one-half interest in certain real property or, instead, have interests proportional to their individual contributions. We remanded for further proceedings on that issue, particularly because the property title was not in evidence and was significant to the determination. *Id*. at 184-85. As in *Brandt*, there was no discussion of post-separation contribution.

Notably, the trial court in this case understood that *Beal* was controlling authority. Shortly before trial, plaintiff moved to dismiss defendant's contribution defense. In denying that motion, the trial court recognized *Beal* as the

controlling law and stated that the "fact-finding judge" would have to make several determinations under *Beal*: first, what the parties' intent was when purchasing the house; second, if they intended to share the property equally, whether one party made a greater initial contribution that should be offset from the proceeds; and, finally, for the period after the parties separated and one party moved out, what the parties' rights were under "the regular rules of cotenancy," including whether "one party may be entitled to reimbursement." That ruling correctly described the applicable principles under *Beal*.

A different judge presided over trial than ruled on the motion to dismiss. However, the trial judge also recognized *Beal* as controlling law, citing it in the post-trial opinion. At the same time, the trial court failed to properly apply *Beal* after trial.

As a preliminary matter, it should be noted that the "intent" on which *Beal* focuses is the parties' intent while they were in a relationship and living together, *i.e.*, their intent as unmarried domestic partners with respect to shared ownership of real property. In this case, perhaps because the parties took title as tenants in common, the trial court spent little time on the parties' intent regarding ownership and instead focused on the parties' *post-separation* intent, finding that the parties intended that defendant would refinance the property at some point and that an equitable distribution would then occur. Post-separation intent is really a different issue than the intent addressed in *Beal*. We assume without deciding, however, that a post-separation agreement between the parties would be enforceable and presume that the trial court would have enforced such an agreement had there been one.

There was not though. Plaintiff argued that defendant and Manley had an enforceable post-separation agreement, and the trial court rejected that argument and instead looked to the parties' conduct to discern their "implied" post-separation intent. Ultimately, the court found only that the parties intended that defendant would refinance the property at some point and that an equitable distribution would then occur. The court did not find that the parties had any

kind of agreement as to what that equitable distribution would look like, nor could it have found on this record an agreement to vary the regular rules of cotenancy.

The trial court was left, then, with only the parties' status as tenants in common and *Beal*'s mandate to apply "the regular rules of cotenancy" to the post-separation period. *Beal*, 282 Or at 123. As previously discussed, under those rules, if one party moves out and the other party continues to live at the property, the party who stayed is entitled to contribution from the moved-out party for mortgage payments, property taxes, and, in some cases, repairs and improvements. *Id.*; *see also* 313 Or App at 553-54 (more detailed discussion). At the same time, if the staying party's use of the property effectively excluded the moved-out party from using it, the staying party must pay one-half of the property's fair rental value to the moved-out party for the post-separation period. *Beal*, 282 Or at 124.

The trial court failed to apply the regular rules of cotenancy to the post-separation period here, not even mentioning contribution in its opinion or judgment. Despite the court's silence, the likely cause of its error is discernable when one considers the parties' respective arguments about contribution. Plaintiff effectively urged the trial court to read *Himler* as displacing *Beal* with respect to contribution. That is, plaintiff suggested that, under *Himler*, a trial court should address contribution by calculating equity in a particular way—the market value of the real property on the trial date, less the loan balances on the separation date—rather than actually ordering contribution as described in *Beal*. In that context, the trial court made no express ruling on contribution, but it calculated equity in the same manner as the *Himler* trial court had, apparently persuaded that doing so satisfied *Beal*. And, on appeal, plaintiff understands the trial court to have adopted his reasoning, arguing that, when the trial court used the trial-date property value and the separation-date loan balance to calculate equity, it effectively *ordered contribution*, applying "the settled law of contribution per *Himler*."

That is wrong. As previously discussed, *Himler* could not and did not override *Beal*. Faced with defendant's

express request for contribution for post-separation house payments and repairs, the trial court was required to apply the regular rules of cotenancy described in *Beal* and its progeny. It was not enough to simply give defendant the benefit of any equity resulting from post-separation mortgage payments.

Accordingly, we reverse and remand for further proceedings consistent with this opinion. At a minimum, the trial court must determine the amount of contribution to which defendant is entitled under the regular rules of cotenancy with respect to post-separation house payments and repairs. Relatedly, to the extent that the trial court used the separation-date loan balance to calculate equity due to a misreading of *Himler*—*see* 313 Or App at 552-53—it may revisit that issue with the benefit of this opinion's clarification. Finally, there was disputed evidence as to whether defendant's post-separation use of the property excluded Manley (and his heirs) from using it, but the trial court made no findings on that issue, and we leave it to the trial court to address as appropriate whether defendant should be required to pay one-half the reasonable rental value of the property for any exclusive use after separation.[6]

### III.  APPOINTMENT OF REALTOR

In her second assignment of error, defendant challenges the trial court's appointment of a realtor. Although defendant's claim of error is directed to the appointment of the realtor, the underlying issue is the nature of the sale that the trial court ordered. In its written opinion and in the general judgment, the trial court ordered a "private sale" of the real property. Defendant understands "private sale" to

---

[6] Plaintiff views ordering contribution as a "windfall" to defendant, but complete application of the cotenancy rules discussed in *Beal* would avoid any potential windfall, because defendant's contribution rights would be appropriately offset by plaintiff's right to rental payments, if defendant used the property to the exclusion of Manley and his heirs. *Beal*, 282 Or at 124. Moreover, if a party is concerned about the financial consequences of holding property in a cotenancy, the party may always seek partition. *See* ORS 105.205. In this case, the parties disagree about who bore the burden to prove the reasonable rental value of the property, but they have not meaningfully briefed the issue, and so we express no opinion on it. We also express no opinion as to whether the trial court may reopen the record on remand to take additional evidence on reasonable rental value, as that is also an issue that the parties have not briefed.

mean that she will refinance the property and buy out plaintiff's interest. Plaintiff understands "private sale" to mean a "public sale in the open market."

Although defendant's argument has more immediate appeal, in that it does not depend on "private" meaning "public," plaintiff's argument is not specious, in that some aspects of the trial court's decision suggest that the court may have contemplated a third-party sale. For example, the court's written opinion (which is incorporated into the general judgment) refers to "the buyer" in the transaction, as well as requires that defendant maintain the property in good condition until it is sold.

Without knowing what type of sale has been ordered, we cannot meaningfully evaluate defendant's argument that it was error to appoint a realtor. There is also at least some possibility that the trial court meant to appoint the person named in the judgment as a *referee*, rather than a realtor, which would be significant because defendant consented to his appointment as a *referee* but not to his appointment as a realtor. *See* ORS 105.245 (providing for the trial court to appoint one or more referees to sell property if the court determines that a sale is necessary rather than a partition).

Under the circumstances, there is little use in our speculating as to what the trial court had in mind. Given that we are already reversing and remanding the judgment based on the first assignment of error, we also remand on the realtor issue, specifically instructing the trial court to clarify on remand what type of sale it is ordering and, if necessary, to clarify the nature of any appointments.

Reversed and remanded.