Submitted on record and brief March 31, 1997, judgment modified in part; otherwise affirmed March 11, 1998

Delores PINTO,
*Appellant,*

*and*

Richard G. SMALZ,
*Respondent,*

*and*

Evelyn G. SMALZ,
aka Evelyn G. Edwards,
*Third-Party Respondent.*

(95-1746-D-2; CA A93650)

955 P2d 770

Loren L. Sawyer, Judge.

Claudette L. Yost argued the cause and filed the brief for appellant.

No appearance for respondent and third-party respondent.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DEITS, C. J.

## DEITS, C. J.

This case is an equitable proceeding for the dissolution of a domestic partnership. Petitioner seeks review of the trial court's division of property. She argues that the trial court erred when it failed to award her an equitable interest in the proceeds of the sale of the real property in which she and respondent, her domestic partner, resided during the last years of their relationship. She also argues that the trial court erred in granting a motion to dismiss respondent's mother, a third-party respondent. On *de novo* review, we modify the judgment.

Petitioner and respondent had a 10-year relationship. They began living together in California in 1984.[1] In 1985, the parties[2] purchased a home in California. The source of the funds for the down payment on this house is not entirely clear. Petitioner testified that the down payment was about $25,000 and that she paid a substantial portion of that from her savings account. Respondent's mother testified that she gave respondent about $20,000 for the down payment and closing costs. When questioned by petitioner's attorney about whether she was certain that respondent actually used the money to make the down payment, the mother said that she was not certain but that she assumed that he did.

During the time that the parties lived in the house, they maintained a joint checking account. Petitioner worked for most of this period and deposited her earnings in the joint account. Respondent did not work but received monthly checks from his mother of about $400 to $500 that he deposited in the parties' joint account. Title to this house was in petitioner's name only. The parties sold the house after living there for about three years. Respondent received the $20,000 in proceeds from the sale of the house. He bought a $10,000 boat with this money. Petitioner testified that she did not receive any of the proceeds and that she did not know what

---

[1] Respondent did not appear during trial and also does not appear on appeal.

[2] Although respondent's mother was a party to this case, for ease of discussion, we will refer to petitioner and her domestic partner as "the parties."

respondent did with the remaining $10,000. The parties separated for about seven months but eventually resumed living together in Oregon.

In 1989, the parties purchased a house on Abby Lane in Gold Hill, Oregon, for $43,000. The title to the property was in respondent's name only. Petitioner testified that she initially paid about $1,000 toward the down payment from her savings account and then paid $2,400 toward a balloon payment of $5,000, either by borrowing from her credit card or from a withdrawal from her savings account. She also testified that respondent's mother provided some money for the purchase of the house, but that she did not know the amount. Respondent's mother testified that she gave the parties $5,000 for the down payment and also $5,000 for a balloon payment. The mortgage payment on the property was $403 per month. During this period, petitioner worked on a regular basis and deposited her earnings in the parties' joint account. Respondent did not work but again received monthly payments from his mother of about $400, which he deposited in the joint account. Petitioner testified that she paid the mortgage from the parties' joint checking account. It was undisputed that petitioner also paid the taxes on the property as well as expenses for utilities, insurance, and maintenance and repairs on the house. Additionally, petitioner wrote checks on the joint account to pay the parties' vehicle insurance and to buy food for them. She testified that it was sometimes necessary for her to use her personal credit cards to cover the parties' joint expenses.

The Abby Lane property was sold for $80,550 in 1994, at about the same time that the parties ended their relationship. The mortgage on the house was $33,000. Respondent gave his mother $20,000 from the proceeds of the sale and kept about $13,000 for himself.[3] Respondent's mother testified that she put the $20,000 that she received from respondent into an investment account. She said that

---

[3] Respondent and his mother filed a joint response to petitioner's petition for dissolution. In that response, respondent and his mother "allege[d]," but did not assert as a counterclaim, that petitioner owes respondent $20,000 from the sale of the California property and then, in the prayer for relief, both sought a judgment against petitioner for $20,000. The trial court did not act on the allegation, and the issue has not been raised on appeal.

she also applied part of the proceeds towards the purchase of property in Nevada and part to purchase a residence in Grants Pass on Park Street, in which respondent now lives. Petitioner received no proceeds from the sale of the Abby Lane property.

The trial court found that the parties clearly intended to share assets and expenses during their relationship. The court divided the personal property as petitioner requested, awarding personal property to petitioner that, according to her, was worth $5,950[4] and awarding personal property to respondent that was worth $2,370. The court also awarded petitioner $2,000 to pay for respondent's "share" of the debt on the credit cards. It did not award her any interest in the proceeds from the Abby Lane property.

Petitioner argues, based on *Beal and Beal*, 282 Or 115, 577 P2d 507 (1978), and subsequent cases regarding the equitable distribution of property of unmarried cohabitants, that the trial court erred in not awarding her an equitable interest in the proceeds of the Abby Lane property. She contends that, as in *Beal*, in this case, the parties had an implied agreement that they would pool and share assets and liabilities for their mutual benefit and that, accordingly, she should receive an equal portion of the proceeds from the sale of the house.

In *Beal*, the Supreme Court considered the question of the property rights of parties who have accumulated property while living together in a nonmarital domestic relationship. 282 Or at 117. The court concluded in *Beal* that the courts have authority to distribute property owned by the parties in a nonmarital domestic relationship. The court explained that the primary consideration in such cases is the express or implied intent of the parties. *Id.* at 122. Where the intent of the parties has not been expressly articulated, we must "closely examine the facts in evidence to determine what the parties implicitly agreed upon." *Id.* If the intent is not obvious, we may look at such factors as

---

[4] That amount included a value for the boat of $4,500. After trial, petitioner moved for a new trial when she learned that the boat had been damaged and was worth significantly less. The trial court denied the motion and petitioner does not assign error to that denial.

"how the parties held themselves out to their community, the nature of the cohabitation, joint acts of a financial nature, if any, how title to the property was held, and the respective financial and nonfinancial contributions of each party."

*Wallender v. Wallender*, 126 Or App 614, 617, 870 P2d 232, *rev den* 319 Or 150 (1994). No one of the above factors is dispositive. *See, e.g.*, *Wilbur v. DeLapp*, 119 Or App 348, 352, 850 P2d 1151 (1993) (legal title of property is not dispositive); *Raimer and Wheeler*, 119 Or App 118, 121, 849 P2d 1122 (1993) (failure to hold themselves out to be husband and wife does not defeat claim for equitable division); *Shuraleff v. Donnelly*, 108 Or App 707, 715, 817 P2d 764 (1991) (equitable division granted despite parties' separate personal bank accounts, charge accounts and monthly division of living expenses). We may exercise our equitable powers to reach a result that is fair under all of the circumstances. *Wilbur,* 119 Or App at 351.

Petitioner testified at trial that her intent was to live as husband and wife. In response to a question from her attorney regarding her intent when she moved in with respondent in 1984, she explained:

"Well, the intent was to live as husband and wife and to share things equally and to share families and money resources and problems and to do—to have a family-like relationship."

As noted earlier, respondent did not appear at trial and, thus, there is no express indication from him as to his intent. Nonetheless, the parties' actions during their 10-year relationship supports the inference that it was the intent of both parties to maintain a long-term relationship and to share assets and liabilities for their mutual benefit. The parties lived together continuously, with the exception of a few short separations. Both contributed money toward down payments on two homes. They had a joint checking account from which most of their expenses were paid, including the mortgage on both houses. The amount of petitioner's earnings during this period is not clear from the record. Nonetheless, considering the expenses that were paid from the joint account, it is evident that her contribution was substantial.

Clearly, her contribution toward the parties' expenses was a significant factor in their ability to maintain their standard of living, including owning a home. There is no indication that respondent ever objected to this long-term arrangement.

■ After considering all of the circumstances here, we find that the evidence supports the conclusion that the parties did intend to share their assets and liabilities and, in particular, that they intended to share the Abby Lane property. Accordingly, we conclude that the trial court erred in not equitably dividing the proceeds received from the sale of the Abby Lane property. We hold that petitioner is entitled to an equitable share equal to one half of the $47,500 in proceeds from the sale of that property, or $23,750.

Petitioner next argues that the trial court erred in dismissing respondent's mother as a third-party respondent. In her pleadings, petitioner included a claim against respondent's mother, alleging that:

> "Evelyn G. Smalz aka Evelyn G. Edwards is the mother of Respondent and claims an interest in real property which is claimed by Petitioner as part of the resources of the domestic partnership."

In her pleadings, petitioner asked that the parties' property be divided as follows:

"TO PETITIONER:

"1. $23,000 cash; and

"2. All household furniture and furnishings which she has requested.

"TO RESPONDENT:

"1. *All interest in the real property which is in the name of Evelyn Smalz or Evelyn Edwards*;

"2. 20' Bayliner boat;

"3. All other personal property not requested by Petitioner."

(Emphasis supplied.) In her trial memorandum, petitioner requested "an equalizing judgement for her share of the sale proceeds of the Gold Hill home *secured by a trust deed on*

[*respondent's*] *property in his mother's name in Grants Pass* \* \* \*." (Emphasis supplied.)

After the presentation of petitioner's case, respondent's mother moved the court for an order dismissing her from the case on the ground that there was no evidence before the court of any contractual relationship between respondent's mother and petitioner. The following colloquy then took place:

> "[PETITIONER'S ATTORNEY]: Well, the testimony that we have is that [petitioner] believes that the money from the Abby Lane house went into [respondent's] house on Park Street that's in [respondent's mother's] name.
>
> "THE COURT: But you have no evidence of that other than just what she thinks.
>
> "[PETITIONER'S ATTORNEY]: Well, she's claiming an interest in the house; I mean, not yet, but she will."

The trial court granted the motion.

■ On appeal, petitioner argues that the trial court "erred by dismissing third party respondent who received and converted assets of the nonmarital domestic partnership to property in her own name which included [an] equitable share of assets of the parties['] residence." She offers no other argument to support the assignment of error.

We conclude that the trial court did not err in granting respondent's mother's motion to dismiss. The trial court was correct that there was no evidence of a contractual relationship between petitioner and respondent's mother and petitioner did not plead or assert any other theory of recovery on which the court could base any disposition of property owned by respondent's mother. Based on the record before us, the trial court did not err in granting respondent's mother's motion to dismiss.

Judgment modified to award appellant an equalizing judgment of $23,750, with interest accruing at nine percent per annum beginning on the date of the original judgment, payable by respondent in three annual installments of

$7,916.67, with the first payment due on May 1, 1998; otherwise affirmed. Costs, not including attorney fees, to appellant.