Argued and submitted September 11, 2008; general judgment affirmed;
supplemental judgment reversed and remanded December 23, 2009

In the Matter of the Domestic Partnership of

Cglinda G. BAKER,
*Petitioner-Appellant,*

*and*

Robert Lee ANDREWS,
*Respondent-Respondent.*

Multnomah County Circuit Court
060767281; A135564

223 P3d 417

Benjamin M. Karlin argued the cause and filed the briefs for appellant.

Robert Allen Johnston argued the cause for respondent. With him on the brief was Johnston, Root & Leibenguth, P.C.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

In this equitable proceeding for dissolution of a domestic partnership, plaintiff Baker appeals from a judgment determining that no domestic partnership existed and from a supplemental judgment ordering plaintiff and her attorney to each pay sanctions in an amount equal to one half of defendant Andrews's attorney fees. Plaintiff makes seven assignments of error, one pertaining to her domestic partnership claim and six related to the supplemental judgment for sanctions.

Equitable dissolution of domestic partnership claims are subject to *de novo* review, *Fogh v. McRill*, 153 Or App 159, 165, 956 P2d 236 (1998).[1] We review the trial court's award of sanctions under ORCP 17 for abuse of discretion and to correct any legal error. *G. W. Paulson Co. v. Grady*, 171 Or App 198, 203, 14 P3d 672 (2000) (review for errors of law where attorney fees are imposed as a sanction based on an interpretation of law); *Fernley v. Lloyd*, 164 Or App 109, 113, 988 P2d 930 (1999) (review for abuse of discretion where trial court's decision whether to award sanctions under ORCP 17 depends on trial court's exercise of discretion). Applying those standards of review, we affirm the general judgment but reverse the supplemental judgment.

Plaintiff and defendant lived together from approximately 1982 until 2006. Plaintiff's three children and defendant's two children lived with the parties until the children reached adulthood and moved out. The parties shared the same bed during their time together. Plaintiff and defendant maintained separate bank accounts throughout that time. Plaintiff worked outside the home some of the time, doing jobs such as providing home care for disabled persons and clerking for a state agency. Defendant also worked outside the home and has owned a hauling business with a partner since 1993; plaintiff performed some typing and payroll work for that business without pay. In addition to her paid work, plaintiff worked as a homemaker, performing domestic tasks

---

[1] This case was filed before the effective date of the 2009 amendments to ORS 19.415(3)(b) that made *de novo* review discretionary with the Court of Appeals. Or Laws 2009, ch 231, § 2.

such as cooking, cleaning, shopping, and child rearing for the combined household.

The parties did not discuss or have an agreement about how their property should be divided in the event that their relationship ended. In 1989, the parties purchased a house in plaintiff's name only. The parties refinanced the house and defendant was added to the title in 1994. Plaintiff removed her name from the title in 2004 by quitclaim deed, making defendant the sole record owner of the property. During the period that the parties both lived in the home, defendant made repairs and additions to it. Defendant paid the mortgage and utilities on the home; there no clear and convincing evidence that plaintiff contributed to the down payment or maintenance of the property. The parties had few other substantial assets except a sports car titled in defendant's name and their furnishings and personal effects.

At trial, plaintiff testified that the parties were in an intimate relationship, with defendant introducing her as his wife to others, that she contributed to the down payment for the house, and that she was the primary provider of child care to the children. Defendant testified that the parties were merely friends, that he was the primary child care provider for his children, that he paid the down payment and mortgage payments on the house, and that he never considered the parties to be "pooling financial resources."

In 2005, plaintiff filed an application for Social Security disability that contained the following sworn statements:

"[Defendant] owns or is buying the home where I live.

"I buy food separately from the other household members.

"\* \* \* \* \*

"I live with my cousin [defendant] in a home he owns. When I had income I paid about $200 towards rent and 1/2 of the utilities. Since 6/05 when my job ended, I've paid only utilities ($200-400/month). He doesn't consider the extra support since 6/05 to be a debt, but I'd like to repay him when I can. I buy my own food separately.

"\* \* \* \* \*

"On May 1, 2005, I took my name off title of [the parties' house] to [defendant] who is related to me. It was worth [blank]. I do not expect additional cash, property or services. I do not still own part of the property.

"[Defendant] and I used to co-own the house together, but it was always mostly his money that paid for it. This year when my income ended, I didn't feel right about my name still being on the title since I wasn't contributing to it, so I took my name off the title and now he's the sole owner. He didn't compensate me for the change because I owe him so much just for helping me out."[2]

Those statements were inconsistent with plaintiff's demand for an equitable division of the house and property. Because of that inconsistency and plaintiff's testimony at trial, the trial court found plaintiff to have "virtually zero" credibility. The court accepted defendant's version of the facts, which it found to be consistent with plaintiff's sworn statements in her application for disability benefits. The court determined that the parties did not intend to create a domestic partnership and denied the equitable relief sought by plaintiff.

On appeal, plaintiff contends that the evidence established that the parties intended to have a domestic partnership and that this court should not defer to the credibility determinations made by the trial court. Although the trial court determination is subject to *de novo* review on appeal, its credibility findings are entitled to great deference, *Short and Short*, 155 Or App 5, 18, 964 P2d 1033 (1998), unless the "credibility determination is based on a comparison of the substance of the witnesses' testimony with the substance of other evidence," in which case a reviewing court is equally well equipped to determine credibility. *In re Shenck*, 318 Or 402, 420, 870 P2d 185 (1994). Here, the trial court determined that defendant was more credible than plaintiff and based that determination not only on plaintiff's prior inconsistent statements, but also on the trial testimony of both parties and their demeanor during that testimony. Specifically, the record contains oral findings that defendant is more credible than plaintiff and that plaintiff has "virtually zero" credibility. The general judgment also states that defendant

---

[2] The record does not reflect that the parties are actually related.

is a "far more credible witness than plaintiff." Accordingly, we defer to the court's findings on the credibility of the parties.

In light of those credibility findings, the evidence does not show that the parties intended to create a domestic partnership. At common law, cohabitation outside of marriage was regarded as meretricious, and the law provided no remedy to a domestic partner seeking a share of jointly acquired property after the relationship ended. In *Beal v. Beal*, 282 Or 115, 577 P2d 507 (1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession. In *Beal,* the parties were divorced, but shortly after the dissolution of their marriage, they purchased a home and lived together, maintaining a joint savings account and sharing expenses for two years. 282 Or at 117-18. The court held that "a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution." *Id.* at 122. To determine the intent of the parties, courts may look to written agreements or, in their absence, other facts in evidence. *Id.* Where the record

"will leave doubt as to the intent of the parties, * * * inferences can be drawn from factual settings in which the parties lived. Cohabitation itself can be relevant evidence of an agreement to share incomes * * *. Additionally, joint acts of a financial nature can give rise to an inference that the parties intended to share equally."

*Id.*

In *Shuraleff v. Donelly*, 108 Or App 707, 714, 817 P2d 764 (1991), a domestic partnership case where the parties cohabited for 16 years, this court explained that "one reason for providing relief in these disputes is to prevent the party with title, or in possession of property, from enjoying ownership without consideration of the contribution of the other party." We noted that the old rule of awarding property to the person with title or possession "often resulted in advantage to the party who was more cunning or shrewd." *Id.* Equitable relief was allowed in *Shuraleff* based largely on the

"symbiotic" nature of the parties' relationship and their joint efforts in cohabitating and buying and developing a holly farm business.

■ In general, an equitable property division on dissolution of domestic partnership is appropriate where the parties' intent to share assets and expenses is shown by evidence that they have jointly purchased, built, or maintained property, held joint accounts, and made substantial economic and noneconomic contributions to the household for mutual benefit. *See Pinto v. Smalz*, 153 Or App 1, 6-7, 955 P2d 770 (1998) (where the parties both contributed to the purchase of a home, held joint accounts, and contributed to joint expenses, the parties' property, including the home they shared, should be equitably divided); *Wilbur v. DeLapp*, 119 Or App 348, 350, 850 P2d 1151 (1993) (where the plaintiff contributed noneconomic and some economic resources to the household, including homemaking and repairs, she was entitled to an equitable share of real property and a retirement account even though they were in the defendant's name only).

Applying those principles in this case, we infer some intent of mutual ownership of the house from the long period of cohabitation, but other evidence of interdependence and joint financial operations is lacking. The parties did not have joint accounts or investments, as did the parties in *Beal*, *Shuraleff*, and *Pinto*. They did not discuss plans for retirement or savings. Nor is there sufficient evidence for us to conclude that plaintiff contributed both economic and noneconomic resources to the household to the extent that the plaintiff in *Wilbur* did, given the weight we must give the parties' competing testimony in deference to the trial court's credibility findings. Unlike the "symbiotic" relationship in *Shuraleff*, where the parties were engaged in a mutual endeavor for long-term mutual benefit, here plaintiff averred in the disability benefits application that she had not contributed to a common endeavor and should therefore not benefit by sharing ownership of the home; that same understanding would apply to the parties' other assets. There was insufficient evidence that the parties' finances and assets were commingled. Therefore, we affirm the trial court's finding of no domestic partnership.

Plaintiff's other assignments of error concern the supplemental judgment for sanctions in the amount of defendant's attorney fees. Shortly after plaintiff filed her complaint, defendant filed his "Request for Sanctions ORCP 17." The request sought sanctions under ORCP 17, contending that plaintiff's "[c]omplaint is unfounded" because plaintiff was married to another man and because of the sworn representations made by plaintiff in her disability benefits application. The request further provided that defendant "requests attorney fees and costs incurred as a result of having to respond pursuant to ORCP 17." After trial, the court issued a general judgment denying all of plaintiff's claims and directing that "[d]efendant shall proceed pursuant to ORCP 68 with regard to his Motion for Sanctions under ORCP 17 and for prevailing party fees, costs, and disbursements."

On May 3, 2007, plaintiff filed a notice of appeal from that judgment. The trial court heard argument on defendant's motion for sanctions on May 29, 2007, during which they were characterized as "ORCP 17 sanctions." The trial court stated, at the hearing on the ORCP 17 motion, that the case "was absolute frivolity" and "one of the most frivolous cases I've had in my career as a judge." Ultimately, the court concluded that sanctions were appropriate and issued a supplemental judgment captioned "Supplemental Judgment Re: Attorney Fees" that was entered in the register on June 12, 2007, and ordered plaintiff and plaintiff's counsel each to pay one half of an amount equal to defendant's attorney fees. There were no findings made as part of the supplemental judgment, which provided that it was entered "[p]ursuant to ORCP 68, ORCP 17, ORS 33.105(1)(e) and [ORS] 107.445." Plaintiff then filed an amended notice of appeal from that supplemental judgment.

Plaintiff argues that the trial court lacked authority to enter the supplemental judgment and, alternatively, that its entry was an abuse of discretion by the trial court. Plaintiff first contends that the supplemental judgment was captioned as a "judgment re: attorney fees" and that the court did not have authority under any statute or agreement to award attorney fees to defendant. Alternatively, plaintiff

asserts that, if the supplemental judgment imposed sanctions under ORCP 17 D, the notice of appeal divested the court of authority to consider and impose sanctions in light of the requirements of ORS 19.270(1)(a). Plaintiff's remaining assignments of error contend that (1) defendant's motion for sanctions did not describe the alleged false certification with specificity as required by ORCP 17 D(3); (2) the supplemental judgment did not comply with ORCP 17 D because the judgment did not describe the false certification, the grounds for determining that the certification was false, and the basis for the specific sanction imposed; and, (3) the court abused its discretion by ordering any sanctions against plaintiff and her attorney.

■ Initially, we reject plaintiff's assertion that the supplemental judgment awarded attorney fees under ORCP 68, rather than imposed sanctions pursuant to ORCP 17 D. ORCP 68 sets out procedures for asserting a right to attorney fees for the prosecution or defense of an action, and the manner of their proof. ORCP 68 C(1) - (4). The substantive right to an award of attorney fees must be alleged in a pleading or motion based on "the facts, statute or rule that provides a basis for the award of such fees." ORCP 68 C(2)(a). That allegation may be made before "the substantive right to recover such fees accrues." *Id.* The rule allows an award or denial of attorneys fees to be granted in a general judgment if "all issues regarding attorney fees * * * are decided before entry of a judgment pursuant to Rule 67" or by supplemental judgment "[i]f any issue regarding attorney fees * * * is not decided before entry of a general judgment." ORCP 68 C(5).

ORCP 17 C concerns the certifications made to a court through the filing or execution of a pleading, motion, or other document in the course of litigation. As relevant here, ORCP 17 C(4) provides:

> "A party or attorney certifies that the allegations and other factual assertions in the pleading, motion or other document are supported by evidence. * * * The attorney or party certifies that the attorney or party reasonably believes that an allegation or other factual assertion so identified will be supported by evidence after further investigation and discovery."

ORCP 17 D(1) gives the court authority to "impose sanctions against a person or party" who has made or is responsible for a false certification under ORCP 17 C. The sanctions may be imposed "upon motion of a party or upon the court's own motion." ORCP 17 D(2). If the sanctions are sought based on the court's own motion, the court must order a show cause hearing on the sanctions. *Id.* A motion for sanctions by a party "must be made separately from other motions and pleadings, and must describe with specificity the alleged false certification." ORCP 17 D(3). No sanctions are allowed if the party against whom sanctions are sought thereafter amends or otherwise withdraws the offending certification in a timely way. *Id.*

ORCP 17 D(4) describes the amount of financial sanctions that can be imposed:

"Sanctions under this section must be limited to amounts sufficient to reimburse the moving party for attorney fees and other expenses incurred by reason of the false certification, including reasonable attorney fees and expenses incurred by reason of the motion for sanctions, and upon clear and convincing evidence of wanton misconduct amounts sufficient to deter future false certification by the party or attorney and by other parties and attorneys. The sanction may include monetary penalties payable to the court. The sanction must include an order requiring payment of reasonable attorney fees and expenses incurred by the moving party by reason of the false certification."

ORCP 17 D(5) requires that an order imposing sanctions contain particular findings:

"An order imposing sanctions under this section must specifically describe the false certification and the grounds for determining that the certification was false. The order must explain the grounds for the imposition of the specific sanction that is ordered."

Defendant requested "sanctions" in his motion in the amount of his "attorney fees and costs incurred as a result of having to respond [to the complaint] pursuant to ORCP 17." The general judgment allowed defendant to "proceed pursuant to ORCP 68 with regard to his Motion for Sanctions under ORCP 17." The supplemental judgment granted relief

"[p]ursuant to ORCP 68 [and] ORCP 17." The trial court appears to have granted relief under ORCP 17 using the procedures specified in ORCP 68.

The word "sanctions" is used in ORCP 17 D in a nontechnical and common way. Words of common usage should be given their plain, natural, and ordinary meaning, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), and we turn to the dictionary for that ordinary meaning. *State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006). The plain meaning of "sanctions," as the term is used in ORCP 17, is "the detriment, loss of reward, or other coercive intervention that is annexed to a violation of a law as a means of enforcing the law" or "a restrictive measure used to punish a specific action or to prevent some future activity." *Webster's Third New Int'l Dictionary* 2009 (unabridged ed 2002). Although the amount of sanctions under ORCP 17 D(4) can be calculated to be an amount "sufficient to reimburse the moving party for attorney fees and other expenses," the sanctions can include, in some circumstances, "amounts sufficient to deter future false certification" and "monetary penalties payable to the court." It is apparent, then, that a request for sanctions under ORCP 17 D is a demand for an assessment of a penalty to punish and deter false certifications. The allowance of sanctions under ORCP 17 D(1) is discretionary with the court providing, in part, that ("[t]he court *may* impose sanctions against a person or party" (emphasis added)).

By contrast, an award of attorney fees under ORCP 68 is compensatory in nature, based on the accrual of a "substantive right to recover such fees" under the common law or by statute or rule. ORCP 68 C(2)(a). ORCP 68 A(1) defines "attorney fees" as compensatory in nature ("[T]he reasonable value of legal services related to the prosecution or defense of an action."). If a party proves a "substantive right to recover such fees," a court is required to award fees under ORCP 68 C(4)(c)(ii) ("The court shall deny or award in whole or in part the amounts sought as attorney fees or costs and disbursements.").

In this case, defendant had not earlier alleged a right to attorney fees in a pleading under ORCP 68 C(2), a

necessary predicate to the allowance and taxation of attorney fees under ORCP 68 C. Defendant did not contend that attorney fees otherwise must be awarded under ORCP 68 C to the prevailing party in a domestic partnership case. *See Shufflebean v. Brown*, 147 Or App 347, 935 P2d 482 (1997) (no right to attorney fees in domestic partnership case under ORS 107.105(5)). Defendant, in short, did not seek attorney fees in the case as a matter of the "substantive right to recover such fees."

Instead, defendant sought, and the supplemental judgment awarded, punitive sanctions in the *amount* of defendant's attorney fees, rather than allowing compensatory attorney fees by virtue of "the substantive right to recover such fees" under ORCP 68 C(2)(a). Thus, the supplemental judgment granted discretionary and punitive relief under ORCP 17 and did not allow compensatory attorney fees under ORCP 68 C.[3] Consequently, the court's authority to enter sanctions by supplemental judgment cannot rest on its power to award attorney fees by supplemental judgment under ORCP 68 C(5)(b).

For much the same reason, we conclude that the trial court exceeded its authority under ORS 19.270(1)(a) in making ORCP 17 D determinations after the filing of the notice of appeal. ORS 19.270(1)(a) provides:

"The Supreme Court or the Court of Appeals has jurisdiction of the cause when the notice of appeal has been served and filed * * *. The trial court may exercise those powers in connection with the appeal as are conferred by law, and retains jurisdiction in the matter for the following purposes:

---

[3] Defendant belatedly contends that the court awarded attorney fees under ORS 20.105. That statute authorizes attorney fees when a trial court finds that "the party willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal." Defendant did not rely on ORS 20.105 in seeking attorney fees below. The trial court did not cite that statute in the supplemental judgment as authority for its action. Nor did the trial court make the finding required by ORS 20.105. We conclude that the court acted under ORCP 17 alone and express no opinion on whether a post-judgment award of attorney fees under ORS 20.105 would be within a trial court's authority under ORS 19.270(1).

"(a)   *Deciding requests for attorney fees, costs and disbursements or expenses pursuant to ORCP 68 or other provision of law.*"[4]

(Emphasis added.) The question presented under ORS 19.270(1)(a), then, is whether the trial court's actions in deciding whether to impose sanctions and how much sanctions to assess under ORCP 17 D are "[d]eciding requests for attorney fees, costs and disbursements or expenses pursuant to ORCP 68 or other provision of law" so as to be within the scope of the trial court's authority after the filing of a notice of appeal.

■    We have already decided that the imposition of sanctions under ORCP 17 was not the allowance of attorney fees under ORCP 68 C. Relatedly, a motion for sanctions is not a "request[ ] for attorney fees * * * pursuant to ORCP 68 or other provision of law" under ORS 19.270(1)(a). Again, a motion for sanctions seeks discretionary and punitive relief from a court; a request for attorney fees seeks remunerative relief that is often mandatory in nature.

Similarly, a motion for sanctions under ORCP 17 D is not a "request for * * * costs and disbursements or expenses pursuant to ORCP 68 or other provision of law" under ORS 19.270(1)(a). The legislature likely intended a common meaning of "costs and disbursements" in the statute, whether "pursuant to ORCP 68" or pursuant to "[an]other provision of law." ORCP 68 defines "costs and disbursements" as "reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services, and include the fees of officers and witnesses," and number of other expenses. Similarly, "expenses" is commonly understood to mean "something that is expended in order to secure a benefit or bring about a result" or "the financial burden involved typically in a course of action or manner of living : cost." *Webster's* at 800. Both "costs and disbursements" and "expenses," then, define something that is lost in order to secure a gain, the price to be paid for an advantage to the payor of some sort.

---

[4] The other portions of ORS 19.270 authorize the trial court to act in various ways after the filing of a notice of appeal, all of which are immaterial to this case.

A "sanction" under ORCP 17 D, on the other hand, penalizes objectionable conduct and involves no *quid pro quo*. Here, the trial court ordered plaintiff and her attorney to each pay one half of the amount of defendant's attorney fees because "the case was absolute frivolity" and to deter future false certifications by plaintiff and her attorney. The assessment of that sanction and the calculation of its amount was not to recompense defendant for the costs and expenses of advancing his position in the litigation, but to penalize plaintiff and her attorney. Thus, the trial court's authority to award "attorney fees, costs and disbursements or expenses pursuant to ORCP 68 or other provision of law" under ORS 19.270 after the filing of a notice of appeal did not include the power to order the sanctions ordered in the supplemental judgment, and the trial court erred in issuing that judgment.

In light of our conclusion that the court lacked authority to enter the supplemental judgment, we do not reach plaintiff's contentions about deficiencies in the form of the judgment or whether the trial court abused its discretion in allowing sanctions under ORCP 17. On remand, if the trial court allows sanctions, the court can make the findings required by ORCP 17 D(5) and explain why the record shows that plaintiff's representations in her disability benefits application were true, so that her factual certifications to the court in the complaint were necessarily false and subject to sanctions.

General judgment affirmed; supplemental judgment reversed and remanded.