# HOLLOWAY,
### *Respondent,*
### *v.*
# HOLLOWAY,
### *Appellant.*

## (81-4-8003; CA A23652)

663 P2d 798

A. Duane Pinkerton, II, Burns, argued the cause for appellant. With him on the briefs was Cramer & Pinkerton, Burns.

Mike Kilpatrick, Mt. Vernon, argued the cause for respondent. With him on the brief was Kilpatricks and Pope, Mt. Vernon.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals from a trial court decree fixing the interests of the parties in real and personal property acquired by them both before and while they were living together unmarried. He acknowledges that the parties lived together but contends that they did not do so as husband and wife and that they never intended to share their property. He contends further that they had an express agreement that 400 acres of land he had contracted to purchase before they commenced living together would remain his sole and separate property. The decree provides that, after each party had been reimbursed for his or her initial contribution, the remainder of the property, including the proceeds from the sale of 400 acres defendant had contracted to purchase before the relationship between the parties commenced, should be divided equally. The question is the intent of the parties.

In 1975, two years before the relationship began, defendant contracted to purchase the 400 acres. He made a $1,000 down payment. A deed to the property was placed in escrow. The contract and deed were in his name only. Thereafter, he paid interest only on the contract until December, 1977. In October, 1977, defendant applied for a loan to pay the balance due on the 400 acres. Both parties signed the loan application. In November, 1977, the parties began living together in plaintiff's house. She had been married twice and was in the process of dissolving her marriage. That dissolution became final in December, 1977. He also had been married twice, but he was then single.

Defendant acknowledges that the parties lived together. He contends, however, that they did not do so as husband and wife and that they never intended to share their property. He contends further that they had an *express* agreement that the 400 acres would remain his separate property.

He testified that, before the parties began living together, they had specific discussions about their future plans and that at that time he told her that he would never marry her, because he had lost two "outfits" as a consequence of his two divorces and he "wasn't going to get married again and get [his] outfit tied up and lose it." He testified further that the parties had specifically discussed the 400 acres "several times" and that plaintiff had assured him "in [sic] several different

occasions, that she didn't want to take my ranch away from me."

Plaintiff acknowledged that before the parties started living together defendant had expressed concern about the fact that he had lost two ranches and that she "was never going to take his ranch away from him * * *." She testified, "[That] is true. I did say that. I said, 'I will never take your ranch away * * *.' " Her contention is that, although she did specifically agree never to take defendant's "ranch" away, he later *sold* the 400 acres, and she would not be violating their agreement, because "it is just money that we are fighting over now."

In *Beal v. Beal,* 282 Or 115, 122-23, 577 P2d 507 (1978), the Supreme Court said:

> "We believe a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution. While this is obviously true when the parties have executed a written agreement, it is just as true if there is no written agreement. The difference is often only the sophistication of the parties. Thus, *absent an express agreement,* courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon. * * *
>
> "* * * * *
>
> "* * * [W]e hold that courts, when dealing with the property disputes of a man and a woman who have been living together in a nonmarital domestic relationship, should distribute the property based upon the express or implied intent of those parties." (Citations omitted; emphasis supplied.)

*See also Rissberger v. Gorton,* 41 Or App 65, 597 P2d 366 (1979).

Plaintiff *expressly* agreed that the "ranch" would remain defendant's separate property. We find no merit in her contention that her promise never to take that property away from defendant is not binding on her now, because the property has been sold. We conclude that a fair and common-sense interpretation of the negotiations between the parties is that, when plaintiff expressly agreed not to claim any interest in defendant's ranch, they were not talking about the 400 acres as such, but, rather, about an asset, regardless of its form, that she agreed would always be his separate property. We hold that the 400 acres remained defendant's separate property and

that plaintiff acquired no interest in that property or in any proceeds from its subsequent sale.

■    Otherwise, we agree with the conclusion of the trial court that, from the time the parties began living together, they intended to share their property equally. They held themselves out as husband and wife. He gave her a ring, and she used his surname. Their families thought that they were married. They shared their incomes, entered into joint financial agreements, maintained joint checking and savings accounts and made joint purchases from those accounts. They worked together on the ranch and at home. When he was away, she cared for the livestock, and he made the payments on their mobile home.

Decree modified; defendant awarded title to the 400 acres and to any proceeds from the sale; defendant to hold plaintiff harmless as to any encumbrance on the 400 acres; affirmed as modified.