Argued and submitted September 17; decision of Court of Appeals affirmed on other grounds, general judgment of circuit court reversed and remanded for recalculation of the division of property, supplemental judgment vacated and remanded December 27, 2019

In the Matter of the Domestic Partnership of
Kirsten Kari STAVELAND,
*Respondent on Review,*
*and*

Michael Jon FISHER,
*Petitioner on Review.*
(CC 16DR00887) (CA A163944) (SC S066424)

455 P3d 510

In this action for dissolution of a nonmarital domestic partnership, the parties dispute whether Staveland was entitled to 50 percent of the appreciated value of the house that the parties resided in together during their partnership. The trial court awarded Staveland 50 percent of the appreciated value of the house, and the Court of Appeals affirmed on that issue. *Held*: (1) A trial court's determination of nonmarital property depends on the court's determination of the express or implicit intent of the parties; (2) appellate courts should review the trial court's determination of such intent as a question of fact.

The decision of the Court of Appeals is affirmed on other grounds. The general judgment of the circuit court is reversed and remanded for recalculation of the division of property; the supplemental judgment is vacated and remanded.

On review from the Court of Appeals.*

George W. Kelly, Eugene, argued the cause and filed the brief for petitioner on review.

Robert T. Scherzer, Portland, argued the cause and filed the brief for respondent on review.

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Landau, Senior Justice pro tempore.**

LANDAU, S. J.

The decision of the Court of Appeals is affirmed on other grounds. The general judgment of the circuit court is reversed and remanded for recalculation of the division of property; the supplemental judgment is vacated and remanded.

_____

\* On appeal from Multnomah County Circuit Court, Susan M. Svetkey, Judge. 295 Or App 201, 433 P3d 749 (2018).

\*\* Garrett, J., did not participate in the consideration or decision of this case.

**LANDAU, S. J.**

This case involves the dissolution of a domestic partnership. More specifically, it involves how to distribute the appreciation in the value of a home in which the parties to a domestic partnership lived during their time together. The trial court found that the parties intended to live as a married couple and share in the appreciation of the home. The Court of Appeals concluded that the trial court did not abuse its discretion in coming to that conclusion. *Staveland and Fisher*, 295 Or App 210, 433 P3d 749 (2018). On review, the parties dispute whether the Court of Appeals applied the correct standard of review and whether that court correctly concluded that the parties should share in the appreciation in the home. We conclude that the Court of Appeals applied an incorrect standard of review, but that it ultimately reached the correct decision. We therefore affirm the decision of the Court of Appeals.

The following facts do not appear to be in dispute. Staveland and Fisher met in April 2011. In June of that year, Fisher purchased a house located on Dickinson Street, which the parties refer to as the "Dickinson house." He purchased the house for $467,500. Staveland did not contribute to the purchase, and Fisher held title to the house in his name only.

Several weeks later, the parties moved into the Dickinson house. They discussed sharing expenses. Fisher agreed to pay the mortgage, property taxes, and homeowners' insurance, while Staveland agreed to pay for "everything else," including electric, gas, and water expenses, as well as food. The parties also worked to improve the Dickinson house, including painting rooms, tiling and carpeting floors, and removing a wall between rooms. Both parties performed labor. Staveland, for example, painted walls and tiled floors. She also made most of the decisions regarding the selection of furniture, color schemes, and the arrangement of art. But Fisher paid for all of the materials.

The parties otherwise kept their financial affairs separate. Fisher, for instance, owned a number of investment accounts when they moved in together. Staveland owned a home on Ainsworth Street—known as the "Ainsworth

house"—which she had purchased some five years earlier. While she lived with Fisher, she rented out the Ainsworth house and was solely responsible for the mortgage, taxes, insurance, and collection of rent. She likewise was responsible for the upkeep of that property, although, on a few occasions, Fisher helped with some minor repairs.

An exception was a joint Vanguard investment account. Even then, though, the parties carefully tracked their respective contributions to that account.

In December 2011, Fisher proposed that the couple get married. Staveland hesitated, because of what she understood from a tax advisor would be negative financial consequences of a marriage. Instead, the parties decided to hold a ceremony that resembled a wedding but did not involve getting legally married. They bought rings. They sent invitations to friends and family for a ceremony that would occur at the Dickinson house, which they referred to as "our house." They exchanged vows before an officiant. They hired a professional photographer and a band. And, after the ceremony, they told at least some of their friends and acquaintances that they were married.

In March 2014, the parties had a son. Staveland assumed most of the childcare duties. She also paid for direct childcare expenses, such as clothes, diapers, food, and medical care. Fisher sometimes provided childcare and occasionally contributed to childcare expenses, writing a check to Staveland.

In the fall of 2015, the parties began to discuss separating. Fisher said that, if Staveland was not going to be his partner anymore, she should start paying him rent. Instead, she and their son moved out of the Dickinson house in December 2015.

Staveland then initiated this action for dissolution of a nonmarital domestic partnership.[1] Among other things,

---

[1] Although the action in this case is for dissolution of a nonmarital domestic partnership, it is not an action for dissolution of a *registered* domestic partnership under the Oregon Family Fairness Act, ORS 106.300 to 106.340. Under that law, parties may register a "Declaration of Domestic Partnership" with the county clerk, ORS 106.320. Parties who have registered are entitled to the same rights and privileges as married persons—including the applicability of statutes

she asserted an interest in one half of the appreciation in value of the Dickinson house during the period that the parties lived together.

At the beginning of trial, the parties advised the court that they had entered into a stipulation as to the distribution of their assets. Counsel for Staveland explained that, "with the exception of appreciation in the home that the parties lived in for four-and-a-half years [(the Dickinson home)], *** each party will receive free and clear of the other party, indemnif[ied] *** from any liabilities thereon, all property that's presently in their own names respectively." Counsel for Fisher agreed. The trial court then questioned both parties to confirm that they agreed with that stipulation.

The remaining issues for trial were child custody and parenting time, distribution of a few items of personal property, and the distribution of the appreciation in the value of the Dickinson home.

On the latter issue, Staveland offered the testimony of an appraiser who testified that the Dickinson house was worth $635,000 as of October 19, 2016, which was near the date of trial. The appraiser also testified that the house had appreciated 10.3 percent in the preceding year and that, when Staveland had moved out some ten months earlier, the house might have been worth between $584,000 and $585,000.

The trial court awarded custody of the parties' son to Staveland and provided parenting time for Fisher. It also distributed the few items of personal property that the parties had disputed. As to the Dickinson house, the trial court began by noting that the relevant legal analysis was set out in *Beal v. Beal*, 282 Or 115, 577 P2d 507 (1978), in which this court had explained that the controlling issue in a non-marital dissolution of partnership case is the intent of the parties. The trial court said:

> "And frankly, your intent [was] to be married. Your intent was to have a family and live together for the rest of your lives. You were very much in love and you wanted to get

pertaining to dissolution of marriage. ORS 106.340 (explaining applicability of laws relating to marriage to registered domestic partnerships).

married and * * * I know that you got advice from a tax person that it would cost you some money if you got married, and I'm not gonna go behind your decision.

"But it was clearly both of your decisions that because of the tax consequences that you understood would occur if you married, and you both decided that what you would do is get married but for the paperwork, but for the license and registering the marriage.

"You, frankly, held yourselves out as husband and wife. You bought rings. You exchanged vows. You * * * told people at work and probably people who are parents of—friends or playmates of [your son's] that you were married, and the only people you * * * told the truth to were your very closest family and friends.

"And so there isn't any question in my mind that your intention was to live as a married couple, to raise the child as a married couple in spite of the fact that you were not legally married. * * *

"[T]here is no question [that Fisher] chose the house, you paid * * * the down payment, you paid the mortgage, the deed's in your name. And there also isn't any question that as you[2] were testifying the first day * * * you referred to it as: We moved into our house; we fixed up our house; we painted our house; we had our wedding ceremony—or our non-wedding ceremony—at our house. You invited people to come to our house.

"* * * * *

"And there isn't any question that you fixed it up together, that you each contributed to fixing up that home. And I'm sure that [Fisher] paid a great deal more in terms of financial contribution. I'm sure that [Staveland] and other members of her family contributed significant physical labor and decision making about decor and colors and all of those things.

"You've lived in that house, it's your family home, and you both cared for it and fixed it up and treated it as your family home. So * * * she is entitled to one-half of the increase in the value of the home.

---

[2] It appears from context that the trial court here was referring to Fisher, but it is not entirely clear.

> "But the only truly solid number that I have for current value is the [\$635,000] number. [The appraiser], in response to a question was, well, how did you come up with the 10.3 percent over the years, over the more than 1 percent a month, and he did the math, came up with another number.

> "And then you went on to testify that that's not really a valid way to appraise a house and come up with a value. There has to be an appraisal done at the * * * point in time where you're asking for what that value is."

The court then entered a judgment awarding Staveland 50 percent of the appreciated value of the Dickinson house, calculated by subtracting the appraised value at the time of trial (\$635,000) from the value at the time they moved in together (\$467,500), or \$167,500. The trial court also awarded Staveland \$20,000 in attorney fees and costs, and entered a supplemental judgment for that amount.

Fisher appealed, advancing three assignments of error. First, he argued that an equal sharing of the appreciation in value of the Dickinson house was not equitable under the circumstances. Second, he argued that, even if an equal share was equitable, the trial court erred in using the value of the house at the time of trial, rather than the value of the house ten months earlier, when Staveland had moved out. Third, he argued that the trial court erred in awarding attorney fees without an adequate explanation.

As to the first assignment of error, the Court of Appeals began by explaining the applicable standard of review in the following terms:

> "Because a trial court's exercise of its equitable powers in this context is analogous to its exercise of discretion in marital dissolution cases, we conclude that we should apply the same standard of review: abuse of discretion. *Cf. Kunze and Kunze*, 337 Or 122, 135-36, 92 P3d 100 (2004) (court's final inquiry in marriage dissolution as to the 'just and proper' division of property 'concerns the equity of the property division in view of all the circumstances of the parties' and is 'a matter of discretion')."

*Staveland*, 295 Or App at 218. The court then concluded that, in awarding Staveland half of the appreciation in the value

of the Dickinson house, the trial court had acted within the range of permissible discretion. *Id.* at 221.

Concerning the second assignment of error, the Court of Appeals concluded that the trial court had erred in calculating the appreciation based on the value of the Dickinson house at the time of trial, as opposed to the time when Staveland had moved out. *Id.* The court accordingly remanded for a recalculation of the value of the house. *Id.* at 221-22.

And concerning the third assignment of error, the Court of Appeals concluded that the trial court had indeed failed to provide an adequate explanation for its award of attorney fees to Staveland. *Id.* at 222. It vacated the supplemental judgment and remanded for further proceedings on the issue of attorney fees. *Id.* at 222-23.

Fisher then sought review in this court. In his petition, he identified two issues for this court to resolve: first, whether the Court of Appeals applied the correct standard of review when it determined that the trial court did not abuse its discretion in awarding Staveland half the appreciation in value of the Dickinson house; and second, whether, under the circumstances of this case, the trial court erred as a matter of law in making that award. Neither party has taken issue with the Court of Appeals' decision as to the other issues that it decided—that is, the need to recalculate on remand the value of the Dickinson house and to explain the award of attorney fees—and we therefore do not address those issues.

We begin with the issue of the proper standard of review. Fisher argues that we must review the trial court's decision as a matter of law. He reasons that the rights and obligations of the parties in a nonmarital dissolution case stem from their explicit or implicit agreement, and that the terms of the parties' agreement are a matter of law. It follows, he argues, that appellate review of the circuit court decision is reviewed for legal error, and the standard of review used in marital dissolution—usually, review for an abuse of discretion—is inapplicable. Staveland, meanwhile, argues that the Court of Appeals was correct in concluding

that the trial court's decision must be upheld unless it represents an abuse of discretion.

As we have noted, in describing the appropriate standard of review, the Court of Appeals drew an analogy from dissolution of marriage cases. Citing this court's decision in *Kunze*, the Court of Appeals concluded that the proper standard of review is abuse of discretion. *Staveland*, 295 Or App at 218 (citing *Kunze*, 337 Or at 135-36). For the reasons that follow, we conclude that the Court of Appeals erred, both in its reading of *Kunze* and in its reliance on *Kunze* for the standard of review in this case.

*Kunze* was a dissolution of marriage case, in which the principal issue was the division of property. 337 Or at 124. The property included a fairly complicated collection of assets, some of which the parties had acquired separately, and some of which had been commingled. In sorting through those assets, this court noted that ORS 107.105(1)(f) directs the courts to divide property in a manner that is "just and proper in all the circumstances." *Id.* at 133. The court further noted that, "[t]o achieve that directive, the statute empowers the court to distribute any real or personal property that either or both of the parties hold at the time of dissolution, including property that the parties had brought into the marriage." *Id.* That property within the court's dispositional authority, the court explained, is known as "marital property." *Id.*

The court then explained that, although ORS 107.105 (1)(f) authorizes courts to equitably dispose of all marital property, a subset of that marital property—property acquired during the marriage, known as "marital assets"— is subject to an evidentiary presumption that the parties contributed equally to its acquisition. *Id.* Because of the distinction between marital *property* and marital *assets*, and because of the evidentiary presumption that applies only to the latter class of property, the court said that property division analysis in marital dissolution cases must follow a particular sequence. *Id.* at 133-34.

First, if a party establishes that the property at issue was acquired during the marriage—that is, that it is

a marital asset—then there is a presumption that both parties contributed equally to its acquisition. *Id.* at 134. If the parties contributed equally to the acquisition of the marital asset, then that ordinarily means that the parties will divide it equally. *Id.*

Second, if either of the parties seeks to rebut that presumption with evidence that the other spouse did not contribute equally to the acquisition of the marital asset, then the court must determine, by a preponderance of the evidence, whether the presumption has been rebutted. *Id.* at 134-35. The rebuttal of the presumption then may justify a division of the marital assets on a less than equal basis. *Id.* at 135.

Third, after an initial division of marital assets based on the presumption of equal contribution or its rebuttal, the court must engage in a final determination of a just and proper division of all marital property, including any property brought into the marriage that is not subject to the presumption of equal contribution. That final determination, this court explained, "is a matter of discretion. This court will not disturb that discretionary determination unless it concludes that the trial court misapplied" the statute. *Id.* at 136.

The upshot of all that is that it is not quite correct to say that a trial court's division of marital property is simply reviewed for abuse of discretion. The trial court's division of property may consist of legal, factual, and equitable determinations, and each of those determinations will trigger a different standard of review.

In cases in which the evidentiary presumption of equal contribution is challenged, the court first must determine whether the party challenging the presumption has rebutted it by a preponderance of the evidence. *Id.* at 134-35. That determination entails findings of fact, not discretion. The standard of review that applies to that determination is one that applies to trial court factual determinations generally.

Once the factual issues have been determined, the court then may exercise its discretion in determining a "just

and proper" distribution of the parties' marital property. *Id.* at 136.

With that background, we turn to the standards that apply in nonmarital dissolution cases. The leading case on that is this court's decision in *Beal*. In that case, Raymond and Barbara Beal lived together but were not married. *Beal*, 282 Or at 117. They jointly purchased a house on contract and lived there together for about two years. When the domestic partnership ended, the parties disputed who was entitled to the house. *Id.* The trial court granted each party an undivided one-half interest in the property, and Raymond appealed. *Id.*

This court initially noted that, at the time—some four decades ago—nonmarital dissolution cases were still unusual and the law that applied was unsettled. *Id.* at 120. The court observed that other courts around the country and commentators had by then suggested several different doctrinal approaches to nonmarital dissolution cases. One, the court said, was to treat living together in a close family relationship, but without marriage, as creating an implied partnership agreement. *Id.* Another was to draw an analogy to resulting trusts or constructive trusts. *Id.* Still another was to apply the rules of cotenancy. *Id.* at 121. Yet another was to adopt a theory of domestic partnership based solely on principles of equity. *Id.* at 120. Finally, the court cited a law review article in which the author suggested that "the intent of the parties ought to be the guideline for the court in such cases, to the extent that such intent is discernible; to the extent it is not, courts should do equity." *Id.* (citing Carol S. Bruch, *Property Rights of De Facto Spouses Including Thoughts on the Value of Homemakers' Services*, 10 Family L Q 101, 125 (1976)).

In the end, this court adopted the view that the controlling determination is the intent of the parties: "[W]e hold that courts, when dealing with the property disputes of [a couple] who have been living together in a nonmarital domestic relationship, should distribute the property based upon the express or implied intent of those parties." *Id.* at 123. The court elaborated that the parties' intentions may not have been expressed in a written agreement. In

such cases, courts must simply determine their implicit intent from the surrounding circumstances:

> "We believe a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution. While this is obviously true when the parties have executed a written agreement, it is just as true if there is no written agreement. The difference is often only the sophistication of the parties. Thus, absent an express agreement, courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon."

*Id.* at 122.

The court turned its attention to the facts of that case and determined that the evidentiary record supported the trial court's determination that the parties intended that the property be divided equally. *Id.* at 122-23. *Beal*, then, stands for the proposition that, in nonmarital dissolution cases, the controlling question is what the parties either expressly or implicitly intended.

As a rule, if the parties' intentions have been expressed unambiguously in an agreement, then the terms of that agreement are interpreted as a matter of law. *See ACN Opportunity, LLC v. Employment Dept.*, 362 Or 824, 839, 418 P3d 719 (2018) ("If the disputed contract provision is unambiguous, then the court construes the words of a contract as a matter of law." (Internal quotation omitted.)). Otherwise, the determination of the parties' intent is a question of fact.

On point in that regard is this court's opinion in *McDonnal and McDonnal*, 293 Or 772, 652 P2d 1247 (1982). In that case, a dissolution judgment awarded the wife temporary spousal support, but it also incorporated the terms of an oral settlement agreement that authorized the trial court to revisit spousal support in three years. *Id.* at 774-75. There was no mention of a substantial change of circumstances as a predicate to the trial court's review of spousal support. *Id.* at 776. Three years after the dissolution, the wife initiated a modification proceeding, asking for additional spousal support based on changes in her health.

*Id.* at 775. The trial court granted that request. *Id.* at 776. The court regarded the oral settlement agreement unenforceable, but it nevertheless ordered indefinite support based on a substantial change in circumstances. *Id.* The husband appealed, arguing that there had been no change of circumstances, given that the wife's medical condition was known at the time of the dissolution. The wife disagreed and argued in the alternative that, under the terms of the marital settlement agreement, proof of a substantial change of circumstances was not required. The Court of Appeals reversed, concluding that there had been no change of circumstances. *McDonnal and McDonnal*, 54 Or App 296, 634 P2d 1357 (1981). The Court of Appeals further concluded that the settlement agreement was not enforceable. *Id.* at 301.

This court reversed, concluding that the Court of Appeals had erred in determining that the oral settlement agreement that had been incorporated into the dissolution judgment was not enforceable. *McDonnal*, 293 Or at 786. The proper remedy, the court explained was to remand for a determination of the intent of the parties with respect to the oral settlement agreement:

> "In the trial court wife proceeded on the basis of two claims: One, that the court could extend spousal support without a showing of changed circumstances because of the provisions of the decree, and two, that there had, in fact, been a change of circumstances. The court thought it was precluded from considering the first claim and decided the case on the basis of changed circumstances. Because the trial court has not had an opportunity to address the first claim this case is remanded for that purpose. The inquiry on remand is whether the oral property settlement included the provision for post-decree review by the court. * * * *The only way the question can be resolved is by a determination of the intent of the parties. The proper interpretation is an issue of fact* requiring the submission of evidence extrinsic to the agreement bearing on the intent of the parties."

*Id.* (emphasis added).

To recap, then: Under *Kunze*, a trial court's division of marital property may ultimately involve an exercise of discretion, but that exercise of discretion often will be based

on certain predicate evidentiary findings. 337 Or at 135-36. Such predicate evidentiary findings will be reviewed as issues of fact. *Beal* takes a different approach for nonmarital dissolution cases. It instructs that a trial court's division of property will depend on its determination of the express or implicit intent of the parties. Unless the parties have unambiguously expressed that intent in the terms of an agreement, the determination of their intent is a question of fact. *Beal*, 282 Or at 121-22. And a trial court's determination of such intent will be reviewed on appeal as a question of fact.

With that in mind, we turn to Fisher's contention that the trial court erred in finding that the parties intended to live as a married couple and share in the appreciation of the Dickinson house upon their separation. He argues that the court's finding cannot be sustained in light of evidence that Fisher's was the only name on the title to the house; the parties kept separate financial accounts; and Fisher made all the payments for the mortgage, taxes, and home insurance. In addition, Fisher argues that it is inequitable that Staveland should be awarded half the appreciation in the Dickinson house when she was awarded all the appreciation in the Ainsworth house. We are not persuaded.

To begin with, given our standard of review of the trial court's findings, the fact that Fisher can identify some evidence—even a lot of evidence—that would support alternative findings is beside the point. Under ORS 19.415(1), appellate courts review a trial court's factual findings "as provided in section 3, Article VII (Amended) of the Oregon Constitution." That constitutional provision, in turn, requires a party challenging a finding of fact to establish that there is "no evidence" to support it. *See State v. Brown*, 306 Or 599, 604, 761 P2d 1300 (1988) ("Article VII (Amended), section 3, of the Oregon Constitution decrees that a fact decided by a jury may not be reexamined unless the reviewing court can affirmatively say that there is no evidence to support the jury's decision."). The only question, then, is whether there is some evidence in the record to support the trial court's finding. As the Court of Appeals correctly concluded, there is.

There is ample evidence that the parties held themselves out as husband and wife, and that their intention—but

for the specter of adverse tax consequences—was to live as husband and wife. That permits an inference that they intended to be treated as husband and wife at the end of their relationship, and to share equally in the property acquired during that relationship. *See Holloway v. Holloway*, 63 Or App 343, 347, 663 P2d 798, *rev den*, 295 Or 617 (1983) (that the parties held themselves out as husband and wife supported the inference that they intended to share property). Moreover, although they maintained mostly separate financial accounts, there is evidence that they treated the Dickinson house as a common asset. They described it to others as "our house," they both provided substantial labor and upkeep, and they both shared the expenses of living together in the Dickinson house—with Fisher paying for the mortgage, property taxes, and insurance, and Staveland paying for all utilities, household expenses, and childcare expenses. In short, we cannot say that the record contains no evidence to support the trial court's finding.

Concerning the asserted inequity of the trial court's decision in light of the award of the Ainsworth house to Staveland, Fisher's argument likewise fails. Strictly speaking, *Beal* holds that the division of property in nonmarital dissolution cases turns on the intent of the parties, not equity. The only mention of equity in *Beal* is in reference to two law review articles that the court cited. One suggested that dissolution of domestic partnerships should be predicated on principles of equity alone, a suggestion that the court rejected. *Beal*, 282 Or at 122. The other was an article in which the author proposed that dissolution of nonmarital domestic partnerships should be based on the intent of the parties, and, if such intent cannot be determined, courts should "do equity." *Id.* at 120. The court endorsed at least part of that proposal—the part having to do with the intent of the parties. It could be argued that the court implicitly endorsed the balance of the proposal, as well. But, at best, the court implicitly endorsed the idea that equity comes into play *if the parties' intent cannot be determined*. In this case, the court could and did determine the intent of the parties.

It could also be argued that, *Beal* aside, this court should recognize that equity always is a consideration in property division cases, whether or not they involve marriages.

But that contention has not been briefed or argued by either party in this case. We leave for another day the extent to which considerations of equity factor into the analysis that *Beal* requires.

Aside from that, Fisher expressly stipulated that, with the sole exception of the appreciation in the value of the Dickinson house, the parties would each keep the assets that they held in their own names. Thus, Fisher kept the Dickinson house and his investment accounts, and Staveland kept the Ainsworth house and her investment accounts, and the only issue before the court was whether to award Staveland some portion of the appreciation in the Dickinson house. Fisher's argument on appeal is difficult to square with that stipulation at trial. And, if we should take into account the Ainsworth house that belonged to Staveland, it is not clear why we should not also take into account Fisher's retention of substantial property held in his name and, if we did take into account Fisher's other property, why the trial court's decision was erroneous.

The decision of the Court of Appeals is affirmed on other grounds. The general judgment of the circuit court is reversed and remanded for recalculation of the division of property; the supplemental judgment is vacated and remanded.